# THOMAS McELHONE v. GERALD R. GEROR.[1]

May 24, 1940.

No. 32,443.

[1]Reported in 292 N. W. 414.

*O. A. Blanchard,* for appellant.
*Beldin H. Loftsgaarden,* for respondent.

STONE, JUSTICE.

Suit for injunction. From the order overruling his demurrer to the complaint (the trial judge having certified the question as important and doubtful), defendant appeals.

Plaintiff and defendant are competitors in the retail grocery trade. The complaint alleges that defendant was selling goods

"at less than the cost thereof, for the purpose and with the effect of injuring competitors and destroying competition, including the business of this plaintiff." The relief sought is an injunction, under L. 1937, c. 116, as amended by L. 1939, c. 403 ("An act to define and prohibit unfair sales and unfair competitive trade practices").

The demurrer puts in issue the constitutionality of the statute. In Great A. & P. Tea Co. v. Ervin (D. C.) 23 F. Supp. 70, the 1937 law was held unconstitutional in several respects. To remove its defects, it was amended in 1939, and as amended is now challenged.

The law has three parts. The first applies to the manufacture, production, or distribution of commodities in general use or consumption. It prohibits price discrimination between different localities. The second applies to the "selling * * * of any commodity, article, goods, wares or merchandise, in wholesale or retail trade." Prohibited are sales "at less than the cost thereof * * * for the purpose or with the effect of injuring competitors and destroying competition." Part 3 provides penalties and authorizes injunctive relief. The second part is the one now attacked. It is said that the legislature has no constitutional power to regulate prices in retail trade. The argument is put upon the principle of freedom of contract, considered implicit in the guaranty of due process of law in the Fourteenth Amendment to the federal, and art. 1, § 7, of the state, constitution. There is also argument that the statute is unreasonable and arbitrary in operation.

1. Neither under the due process guaranty nor otherwise is the right to freedom of contract absolute. As with most other individual rights, it is qualified and limited by similar rights of others and those of government. Individual liberty must yield to the conflicting interest of society, acting through sovereign government. Individual will must give way to that of government when the latter is expressed in declared policy, enforced by constitutional means.

This law purposes protection of retail trade against defined and detrimental practices. Its method is to prohibit sales below cost when designed to injure, or in fact resulting in injury to, competition therein.

Long has it been thought that a chief interest of government is freedom of trade. So government has long protected it, not only from the restraint of monopoly, but also the lesser hindrance of contracts in restraint of trade. In such policy is reflected centuries of experience, resulting in the conclusion that in the interests of society competition should be unrestrained.

All laws of a democracy are but expressions of a policy drawn, correctly or otherwise, from human experience. It is therefore to be expected that the policy they express will change as new experience teaches that old policy is mistaken either in factual basis or functioning.

It is apparent that the legislature has determined (the preamble of L. 1939, c. 403, is copied in the footnote[2]) that unrestricted competition has resulted in damage to the public interest. Hence the restrictions, imposed because in the judgment of the lawmakers they would protect public welfare.

The measure is definitely designed to protect the weak against the strong. The strong have no unlimited constitutional power so to use their strength as to crush the weak. Therefore, in the field of trade, why is it not competent for a law bearing on all alike to bar an artificial and wholly harmful practice tending to

---

[2]"WHEREAS, the practice of selling certain items of merchandise below cost in order to attract patronage is generally a form of deceptive advertising and an unfair method of competition in commerce; and

"WHEREAS, such practice causes commercial dislocations, misleads the consumer, works back to the prejudice of and against the farmer, directly burdens and obstructs commerce, and diverts business from dealers who maintain a fair price policy; and

"WHEREAS, bankruptcies among merchants who fail because of the competition of those who use such methods result in unemployment, disruption of leases, and non-payment of taxes and loans, and contribute to an inevitable train of undesirable consequences, including economic depression."

eliminate the weak and leave the whole field to the strong? We see therein no violation of the constitutional guaranties of due process. The independent merchant, small or large, is a legitimate object of legislative solicitude. It cannot be otherwise in view of his contribution to the building of, and his present place in, our economic structure.

If the legislature may protect the public from harmful results of restraint of trade, we see no reason to deny a similar power to shield from the damaging effects of unrestricted competition. That attempt is but another evidence, either that experience is changing or that a conclusion drawn from experience is modified to fit new conditions. Implicit therein is the legislative conclusion that the absence of such restraints as are now imposed is, of itself, resulting in undesirable and preventable restraint.

"So far as the requirement of due process is concerned, and in the absence of other constitutional restriction, a state is free to adopt whatever economic policy may reasonably be deemed to promote public welfare, and to enforce that policy by legislation adapted to its purpose." Nebbia v. New York, 291 U. S. 502, 537, 54 S. Ct. 505, 516, 78 L. ed. 940, 89 A. L. R. 1469.

2. Until recently it was thought, incorrectly, that outside the field of businesses conducted under a franchise and enterprises which, historically, were considered subject to price regulation, the fixing of prices was permissible only where the business was "affected with a public interest." Tyson & Bro. v. Banton, 273 U. S. 418, 429, 47 S. Ct. 426, 428, 71 L. ed. 718, 58 A. L. R. 1236; Williams v. Standard Oil Co. 278 U. S. 235, 49 S. Ct. 115, 73 L. ed. 287, 60 A. L. R. 596. That doctrine, which put price control in a different category from other forms of state regulation, has been disapproved. In Nebbia v. New York, 291 U. S. 539, 54 S. Ct. 517, 78 L. ed. 958, 89 A. L. R. 1469, it was said:

"Price control, like any other form of regulation, is unconstitutional only if arbitrary, discriminatory, or demonstrably irrele-

vant to the policy the legislature is free to adopt, and hence an unnecessary and unwarranted interference with individual liberty."

In State v. McMasters, 204 Minn. 438, 283 N. W. 767, we sustained L. 1937, c. 235, 3 Mason Minn. St. 1940 Supp. §§ 5705-31 to 5705-38 ("An act to prevent unfair competition and unfair trade practice in service trades"), empowering the governor, after survey, to fix the minimum price for haircuts.

3. The present statute prohibits sales at less than cost for the purpose or with the effect of injuring competitors and destroying competition. Intent to injure is not essential to violation. This is not fatal to the act. Sales below cost which have the effect of injuring competition may be prohibited regardless of intent.

The cases urged in support of a contrary conclusion are easily distinguishable. In Tyson & Bro. v. Banton, 273 U. S. 443, it was said that:

"It is not permissible to enact a law which, in effect, spreads an all-inclusive net for the feet of everybody upon the chance that, while the innocent will surely be entangled in its meshes, some wrongdoers also may be caught."

Those words were directed at a statute which prohibited ticket brokers from reselling tickets at more than 50 cents in advance of the price printed thereon. It was considered that, even though the state could prevent fraud and extortion in ticket brokerage, it could not do so by arbitrarily setting the price, for such a regulation prohibited those not guilty of fraud or extortion from carrying on business in a legitimate way.

In Fairmont Creamery Co. v. Minnesota, 274 U. S. 1, 47 S. Ct. 506, 71 L. ed. 893, 52 A. L. R. 163, it was thought that the purchase of cream at different prices was often justified by a difference in competitive conditions. Therefore a statute forbidding such a practice was held unconstitutional (although it did prohibit a practice used by some to promote monopoly), because it also prohibited the same practice by others when justified by competitive conditions and without wrongful intent. From that defect this statute is free.

In Commonwealth v. Zasloff, 137 Pa. Sup. 96, 8 A. (2d) 801, 803, a fair trade statute was invalidated because innocent sales which, "though below cost, neither affect competition nor otherwise offend against public interest" were forbidden. It was thought that the act did not bear a fair relation to the purpose to protect fair trade practices in distribution, and was thus outside the state's police power.

In State v. Packard-Bamberger & Co. Inc. 123 N. J. L. 180, 8 A. (2d) 291, 293, a similar act was invalidated because it prohibited sales below cost "regardless of intent, purpose, or effect upon fair trade."

The legislature is attempting to protect retailers and the public from unfair trade practices. It is not for us to deny its conclusion of fact that sales below cost are harmful and constitute a trade practice so unfair and injurious as to require legislative attention. The act declares and implements valid policy. We cannot say that the implementation bears no relation to the purpose. So, whatever its interference with plaintiff's freedom of contract, the statute transgresses no constitutional guaranty, unless in other respects it is arbitrary or unreasonable. The police power, which is about all the power that sovereign government has, aside from its powers of eminent domain and taxation, is not limited to protection of public health, morals, and safety. It extends also to "economic needs." Veix v. Sixth Ward B. & L. Assn. — U. S. —, 60 S. Ct. 792, 84 L. ed. — (opinion filed April 22, 1940). Therefore it may protect from economic harm.

4. The statute defines cost as [L. 1939, c. 403, § 2, 3 Mason Minn. St. 1940 Supp. § 3976-42]:

"1. The actual current delivered invoice or replacement cost whichever is lower plus the cost of doing business at said location by said vendor;

"2. Where a manufacturer publishes a list price and discounts, in determining such 'cost' said manufacturer's published list price and discounts then currently in effect plus the cost of doing business by said vendor shall be prima facie evidence of 'cost.'"

The retailer is to base his price on the lower of two possible costs—actual or replacement. In that there is nothing arbitrary or unreasonable.[3]

5. Nor is it unreasonable to make the manufacturer's current, published list price and discounts *prima facie* evidence of cost. They will usually represent actual cost. Furthermore, it would be difficult for the aggrieved party to show actual cost, whereas the party charged with violation has the proof and can easily produce it.

6. Two elements comprise cost—actual outlay for goods and the expense of doing business. The latter is defined, 3 Mason Minn. St. 1940 Supp. § 3976-42, as "all current costs of doing business." The cost for the twelve-month period immediately preceding, or a shorter time if the business is less than a year old, is made *prima facie* evidence of current costs.

Here again is nothing unreasonable. To prohibit sales at less than actual cost, plus overhead expense, and make the preceding year's costs *prima facie* evidence of current facts, is not arbitrary. Normally the costs of retailers are not erratic. The burden is merely shifted to the retailer to go forward with evidence that his costs have changed enough to justify his prices. The burden is not great, because he will, or should, be aware of substantial changes in his costs. The burden of proof remains with the party attempting to prove a violation.[4]

7. The law (L. 1939, c. 403, § 2, 3 Mason Minn. St. 1940 Supp. § 3976-42) contains the following:

---

[3]The definition of cost in the 1937 act, L. 1937, c. 116, Part 2, § 3 ("cost shall be the manufacturer's list price less his published discounts plus the cost of doing business by said vendor") was held arbitrary because the list price less published discounts frequently does not represent actual cost to the retailer. Great A. & P. Tea Co. v. Ervin (D. C.) 23 F. Supp. 70.

[4]In 23 F. Supp. 70, the 1937 act was held unconstitutional in part because the cost of doing business was defined as the cost for the twelve-month period immediately preceding. In event of change in the retailer's mode of operation, that might bear no relation to actual costs at the determinative moment.

"Any sale made by the retail vendor at less than 10 per cent above the manufacturer's published list price, less his published discounts, where the manufacturer publishes a list price, or in the absence of such a list price, at less than 10 per cent above the actual current delivered invoice or replacement cost, for the purpose or with the effect of injuring competitors or destroying competition, shall be prima facie evidence of the violation of this act."

All this section adds is the declaration that 10 per cent of list price is *prima facie* evidence of cost of doing business. In order to say that the inference permitted is unwarranted we must say that there is no rational connection between the current cost of doing business and 10 per cent of the invoice price. We do not have the facts and cannot so hold.

8. No constitutional question arises from allowing the trier of fact, in the absence of evidence taking the question out of the realm of fact, to find that the retailer's costs were at least 10 per cent of the invoice price of his goods. Such a procedural device is well within those "limits of reason and fairness" within which, even in criminal cases, the burden of going on with evidence may be shifted to the defendant. It is too plainly a reasonable aid to the prosecution "without subjecting the accused to hardship or oppression" to be open to the challenge of unconstitutionality. Morrison v. California, 291 U. S. 82, 88, 89, 54 S. Ct. 281, 284, 78 L. ed. 664.

9. The act exempts from its operation many sales—*e. g.*, sales for purpose of discontinuing trade, sales of style, perishable, or deteriorated goods—which might not be within its scope anyway because lacking the intent or effect necessary to constitute a violation. Also exempt are sales [3 Mason Minn. St. 1940 Supp. § 3976-45(d)]:

"In an endeavor made in good faith to meet the local prices of a competitor as herein defined selling the same commodity, articles, goods, wares or merchandise *in the same locality or trade area.*" (Italics supplied.)

Although the statute speaks of "competitor as herein defined," it nowhere attempts such definition. That is not fatal. The word is sufficiently definite so that no retailer can misunderstand its meaning. He will ordinarily know who his competitors are. The word is qualified by the phrase "in the same locality or trade area." Neither "same locality" nor "trade area" is a phrase of art, with precise meaning. However, both are common terms, susceptible of reasonable application by and to evidence. That in some cases the issue of fact as to "locality" or "trade area" may be difficult of solution does not render invalid that statute under which it arises. Mere difficulty of application in the processes of litigation is not enough to enable a court to say that a statute is unconstitutional. On this point the statute is definite and certain, enough so, anyway, to fend off the present attack so far as it proceeds on the supposition that it is otherwise.

10. The remaining point for appellant, that subd. (b) of § 5 of the 1939 law, 3 Mason Minn. St. 1940 Supp. § 3976-47, violates the constitutional privilege against self-incrimination, we decline to decide. A litigant is in no position to attack a statute on the ground of unconstitutionality until some constitutional right is actually threatened by the law or its attempted enforcement. Rottschaefer, Constitutional Law, p. 27. When the question properly arises whether this law attempts unconstitutionally to compel self-incrimination, it will doubtless go to decision under the rule of Counselman v. Hitchcock, 142 U. S. 547, 12 S. Ct. 195, 35 L. ed. 1110, and Brown v. Walker, 161 U. S. 591, 16 S. Ct. 644, 40 L. ed. 819. Even though subs. (b) were held unconstitutional, there would remain the question whether it would be considered severable, and the law otherwise sustained. L. 1937, c. 116, Part 3, § 4, 3 Mason Minn. St. 1940 Supp. § 3976-49. Even in an action for declaratory judgment, we decline decision of a question of constitutionality unless and until we are sure that it is properly presented in a "justiciable controversy." Seiz v. Citizens Pure Ice Co. 207 Minn. 277, 290 N. W. 802.

Affirmed.