105 P.2d 324

**NISSEN et al. v. MILLER et al.**

No. 4535.

Supreme Court of New Mexico.

Aug. 17, 1940.

Dailey & Rogers, of Albuquerque, for appellants.

R. F. Deacon Arledge and Melvin D. Rueckhaus, both of Albuquerque, for appellees.

BICKLEY, Chief Justice.

Appellants, owners and operators of beauty shops, filed an application for a writ of mandamus against the appellees, as members and officers of the State Board of Cosmetologists of New Mexico, commanding said Board to reinstate a certain order of August 27, 1937, which said latter order approved a schedule of minimum prices in said district. An alternative writ was issued, the allegations of which were traversed by appellees. Upon a stipulation of facts reflected in the judgment, a hearing was had at which time the alternative writ was dissolved and it was adjudged that a permanent writ should not issue. It is from this judgment that this appeal is prosecuted.

In the Board's order in question, it was recited that after extensive investigation, it found that numerous beauty shops were being hurt by the price structure then in effect; that the fixed prices then in effect were not providing sufficient income to keep the shops sanitary and to protect the public health; that the price code was being violated by subterfuge on every hand; that its enforcement had become difficult and impossible; that a lower price scale would increase the gross income of the shops and operators, and would provide

more healthful and more sanitary services to the public. The pertinent statutes are Chap. 221, Laws of 1937, and Chapter 229, Laws of 1937. Section 15, Chapter 221, creates the State Board of Cosmetologists. Subsequent sections of said chapter describe the powers of the Board of Cosmetology pertaining to examination, licensing, and regulation of beauty shops in the State of New Mexico. The pertinent portions of Chapter 229 are thus summarized in the brief of counsel for appellant:

"1. That the Act is an exercise of the police power of the State and its purposes generally are to protect the public welfare, public health and public safety; ·

"2. That unfair, destructive and uneconomic trade practices carried on by the beauty industry have resulted in prices so reduced by unfair competition to a point where it is impossible for the average beauty culturists to support and maintain reasonably safe and healthful service to the public;

"3. That said conditions are a menace to the health, welfare and reasonable comfort of the citizens of the State and tend to the transmission of disease;

"4. That by reason thereof it is necessary that physically clean and healthy operators be employed in the industry;

"5. That the disparity between the price of beauty culture work and other commodities has destroyed the purchasing power of beauty culturists for industrial and sanitary products and has seriously impaired and injured the public health and safety.

"Section 12, Chapter 229, supra, provides as follows:

"'(a) The board shall have the power to approve price agreements establishing minimum prices for cosmetology and beauty culture work, signed and submitted by any organized groups of at least 75 per cent of the cosmetologists and beauty culturists of each judicial district, after ascertaining by such investigations and proofs as the conditions permit and require that such price agreement is just and, under varying conditions, will best protect the public health and safety by affording a sufficient minimum price for cosmetology work to enable the cosmetologists and beauty culturists to furnish modern and healthful services and appliances, so as to minimize the danger to the public health incident to such work.

"'The Board shall take into consideration all conditions affecting the cosmetology and beauty culture profession in its relation to the public health and safety.

"'In determining reasonable minimum prices, the Board shall take into consideration the necessary costs incurred in the particular judicial district in maintaining a beauty shop in a clean, healthful and sanitary condition.

"'(b) The board, after making such investigation, shall either approve or disapprove such agreement, and if same is approved, shall by official order fix the minimum prices set forth in such agreement as the minimum price for all work in such beauty shops.

" '(c) That if the Board after investigation, made either upon its own initiative or upon the complaint of a representative group of cosmetologists and beauty culturists, determine that the minimum prices so fixed are insufficient to properly provide healthful services to the public and keep the shops sanitary, then the Board shall have power to vacate any order theretofore entered approving any such agreement and require the submission of new agreements for its approval.' "

The question is, did the Board exceed its authority when it vacated the order of August 27, 1937, which established minimum prices for cosmetology and beauty culture work? We agree with appellants' statement in their brief: "Our issues here involved are in effect reduced to a determination of the meaning of the word 'insufficient' as used in subsection 'c', supra." Appellants strongly resist appellees' contention that "insufficient", when related to prices, may mean "too high".

We have all heard that the principle of imposition and collection of tariff for revenue only will usually be defeated by making the tariff too high. It is a matter of contemporary history that transportation lines have acquired more business and brought in more revenue by reducing transportation charges. The view that mass production with low prices to the consumer is the better revenue producing policy finds support of many advocates.

It is plain that the statute contemplates the fixing of such minimum prices as will "provide revenue sufficient to provide healthful services to the public and keep the shops sanitary". Even though, at the time of the enactment of the statute, the evil aimed at was brought about by an undue voluntary reduction in prices, the Board was within its powers to determine that "too high" may be as ineffectual as "too low" when it comes to appraising the revenue producing quality of such prices —unless the word "insufficient", as applied to prices, invariably means "too low".

In the first place, we must be careful in considering the context of the word "insufficient". Undoubtedly the language is susceptible of the view that insufficient relates itself to prices, i. e., "insufficient prices". On the other hand, it may be more broadly construed that the legislative intent is that the prices will produce sufficient revenue for the purpose acclaimed. Unquestionably, according to the lexicographers, insufficient may mean too low and "not enough". Even according to this definition, the appellants may not prevail if we consider that the legislature intended that the revenue to be produced is the important end, and that prices are merely a means thereto. The finding of the Board is to the effect that under the price structure as fixed, the revenue produced is "too low" and "not enough" to properly provide healthful services to the public, etc.

Appellants ask us to hold that the legislature had an eye single to *prices* being "too low" to produce sufficient revenue to

the ends desired. We may not ascribe to the legislature an ignorance of those economic principles heretofore adverted to that prices may be "too high" to produce the business and consequent revenue. So, we are driven to the lexicographers to see if there are any definitions of "insufficient" which sanction the view of the Board and of the learned trial judge.

Funk & Wagnall's Standard Dictionary defines "insufficient" thus: "Not sufficient, inadequate to some need, purpose, or use; wanting in needful value, ability, or fitness; incompetent; unfit; . as *insufficient* food; *insufficient* means." It is the antonym of "sufficient", so we turn to the definition of that word in the same book: "Being of such quality, number, force or value as to serve a need or purpose;" Crabb's English Synonyms, at page 385, treating the words "enough, sufficient", says: *"Sufficient,* in Latin *sufficiens* participle of *sufficio,* compounded of *sub* and *facio,* signifies made or suited to the purpose." Fernald's English Synonyms and Antonyms and Prepositions, at page 34, says: *"Adequate, commensurate,* and *sufficient* signify equal to some given occasion or work, * * * *adapted, fit, fitted, suited,* and *qualified* refer to the qualities which match or suit the occasion."

To be insufficient is to not suffice. Roget's Thesaurus of English Words and Phrases, Par. 639, page 245. Century Dictionary defines "suffice" to be enough or sufficient; being equal to the end proposed. And the same work defines "sufficient" as "sufficing; equal to the end proposed."

That will suffice which will "serve, do, satisfy". Allen's Synonyms and Antonyms, page 419. We are not without judicial sanction of these definitions.

"The word 'sufficient' as used in Rev.St. 1911, art. 6713, requiring railroad locomotives and cars to be provided with sufficient and secure grabirons, handholds, and foot stirrups, is not synonymous with 'secure' which as used in the statute means 'safe,' nor does it refer to the number of appliances, but is used in the sense of adequacy and adaptation to the end desired, and means fitness to answer the purpose for which the appliance is intended. Galveston, H. & S. A. Ry. Co. v. Enderle [Tex.Civ.App.] 170 S.W. 276, 277." Words and Phrases, Third Series, Vol. 7, page 266.

"Statute requiring 'sufficient security' for deposit of sinking fund by city commissioners does not contemplate security of actual value of entire deposit, but is satisfied if salvage estimated by commissioners from their investigation of bank, plus demanded quantity of security, are together sufficient reasonably to assure 100 per cent. recovery of deposit. Ky.St. § 3010-12. The word 'sufficient' is defined to mean adequate, enough, equal to the end proposed, and that which may be necessary to accomplish an object; it embraces no more than that which furnishes a plenitude, which, when done, suffices to accomplish the purpose intended in the light of present conditions and viewed through the eyes of practical and cautious men. Louisville Trust Co. v. Commissioners of Sinking Fund of City of

Louisville, 260 Ky. 219, 84 S.W.2d 30, 34." Words and Phrases, Fifth Series, Vol. 5, Page 580.

See also Commissioners of Sinking Fund of Louisville v. Anderson, D.C.Ky., 20 F. Supp. 217, 220.

We agree with the appellees and the trial court that it is both permissible and reasonable to conclude that the statute means that if the prices as fixed by the craft do not *serve,* are not adapted and are unfit "to properly provide healthful services to the public and keep the shops sanitary, then the Board shall have power to vacate any order theretofore entered approving such agreement and require the submission of new agreements for its approval."

Finding no error, the judgment is affirmed, and it is so ordered.

BRICE, ZINN, SADLER, and MABRY, JJ., concur.