109 P.2d 779

**ARNOLD v. BOARD OF BARBER EXAMINERS et al.**

**No. 4571.**

Supreme Court of New Mexico.

Jan. 15, 1941.

Hervey, Dow, Hill & Hinkle, of Roswell, for appellant.

Fred J. Federici, Asst. Atty. Gen., and C. R. McIntosh, of Santa Fe, for appellees.

R. F. Deacon Arledge, of Albuquerque, amicus curiae (appellees).

MABRY, Justice.

The principal issues raised upon this appeal may be stated to be, in substance: (1) Does the legislature have the power to establish a minimum price for the personal services involved in barber work in an attempt to protect and safeguard public health, and (2) Does the legislative act in question amount to an unconstitutional delegation of legislative power to the Barber Board? Another minor and incidental issue will also be noticed.

A suit for declaratory judgment was instituted by appellant in the District Court of Santa Fe county against appellees, composing the Board of Barber Examiners of the State, seeking a declaratory judgment upon the constitutionality of a legislative act, sometimes called the Barbers Price Fixing act, being Chapter 230, Laws of 1937. Section 12 of the act, which is particularly involved in this suit, provides:

"Section 12. Order Fixing Prices of Barber Work. (a) The Board shall have the power to approve price agreements establishing minimum prices for barber work, signed and submitted by any organized groups of at least 75 per cent of the barbers of each judicial district, after ascertaining by such investigations and proofs as the conditions permit and require that such price agreement is just and, under varying conditions, will best protect the public health and safety by affording a sufficient minimum price for barber work to enable the barbers to furnish modern and healthful services and appliances, so as to minimize the danger to the public health incident to such work.

"The Board shall take into consideration all conditions affecting the barber profession in its relation to the public health and safety.

"In determining reasonable minimum prices, the Board shall take into consideration the necessary costs incurred in the particular judicial district in maintaining a barber shop in a clean, healthful and sanitary condition.

"(b) The Board, after making such investigation, shall fix by official order the minimum price for all work usually performed in a barber shop.

"(c) That if the Board after investigation, made either upon its own initiative or

upon the complaint of a representative group of barbers, determines that the minimum prices so fixed are insufficient to properly provide healthful service to the public and keep the shops sanitary, then the Board from time to time shall have authority to vary or re-fix the minimum prices for a barber's work in each judicial district."

The complaint of appellant alleges that appellees, as members of the Barber Board, had previously issued an order under the provision of said section 12 of the act, fixing minimum prices to be charged by barbers in the fifth judicial district wherein appellant's place of business is located. He attacks the order as being invalid and without force because of its unconstitutionality. He says (a) that he is deprived of his lawful right to pursue his lawful business as a barber and the right to contract for personal services, all in violation of the constitution; (b) that said statute which purports to empower the Board to fix minimum prices to be charged by barbers is unconstitutional as a denial of equal protection and due process of law, and as an improper restraint on freedom of contract; (c) that section 12 of the act violates section 18 of article II of the Constitution of New Mexico, this being the due process and equal protection of the law provision; (d) that the provisions of said section likewise violate the 14th Amendment to the Constitution of the United States; (e) that said provisions also are violative of section 38, article IV of the New Mexico Constitution imposing upon the State Legislature the duty of enacting laws to prevent trusts, monopolies and combinations in restraint of trade; and finally, (f) that the said section represents an unlawful delegation of legislative power by authorizing the said Board of Barber Examiners to fix a minimum price for barber work.

 It will be conceded that a justiciable controversy is presented by the pleadings and that plaintiff, by his complaint, shows himself entitled to a declaration of the law upon the questions presented.

The case was tried by the court upon the complaint, answer, reply and evidence submitted under these pleadings, judgment was entered for defendant Board and plaintiff appeals.

 It will be well first to consider the facts found by the court and which are supported by substantial evidence, and thus not to be disturbed, and the conclusions of law announced. The findings of fact are as follows:

That the persons engaged in barber work have a personal contact with such proportion of the public as patronize them, and have an opportunity and ability to spread and transmit diseases.

That the matter of fixing prices for barber work has a direct relationship to the sanitary condition of barber shops and the sanitary habits of the operators therein; and that if said persons engaged in barber work do not receive adequate prices for their services, a direct and adverse effect

will result on the sanitary condition of barber shops and the sanitary habits of the operators therein detrimental to the health and safety of such proportion of the public as patronize them.

That in the fifth judicial district it is economically impossible for the barbers therein to comply with the sanitary rules and regulations of the Board of Barber Examiners and the laws of the state of New Mexico if they should be permitted to do barber work at prices below the minimum prices set by the Board.

The testimony offered on behalf of appellees had to do with the additional cost imposed upon shop operators by the sanitary rules and regulations invoked under authority of the clearly expressed requirements of the statute, and was to the effect that where lower prices than the minimum of 25¢ for a shave and 50¢ for a hair-cut were charged, economies were affected at the expense of sanitary and health considerations. It was necessary, of course, to show, and the court held that appellees did in fact show, a direct connection between the prices charged for barber work in the district in question and the maintenance of healthful and sanitary conditions in the shops.

Following the findings the court adopted brief conclusions of law holding that the means selected by the legislature, to wit, the fixing of minimum prices in the barber industry, has a real substantial and reasonable relation to the maintenance of sanitary conditions; that the statute does not violate section 18 of article II or section 38 of article IV, of the New Mexico Constitution, nor the 14th Amendment to the Constitution of the United States, and that said act does not constitute an unlawful delegation of legislative power to the Board of Barber Examiners.

The main points relied upon by appellant, though grouped separately as hereinbefore pointed out, may well be considered under three principal headings. Under the first will be discussed the question of freedom of contract and violation of the due process and equal protection clauses; under the second we consider the question of unlawful delegation of legislative power; and under the third we will discuss the question of whether the act in question promotes monopolies and unlawfully restrains trade.

Upon the first point, appellant relies principally, though not exclusively, upon five cases to sustain his position. They are: State v. Greeson, 174 Tenn. 178, 124 S.W.2d 253; Duncan v. City of Des Moines, 222 Iowa 218, 268 N.W. 547; City of Mobile v. Rouse, 27 Ala.App. 344, 173 So. 254; Id., 233 Ala. 622, 173 So. 266, 111 A.L.R. 349; Ex parte Kazas, 22 Cal.App. 2d 161, 70 P.2d 962.

Appellees rely upon the holdings in the following cases: West Coast Hotel Company v. Parrish, 300 U.S. 379, 57 S.Ct. 578, 81 L.Ed. 703, 108 A.L.R. 1330; Nebbia v. New York, 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940, 89 A.L.R. 1469; Board of Barber Examiners v. Parker, 190 La. 214, 182

So. 485; Herrin v. Arnold, 183 Okl. 392, 82 P.2d 977, 119 A.L.R. 1471; and the following subsequent cases from Oklahoma following the Arnold decision, viz.: Jarvis v. State Board of Barber Examiners et al., 183 Okl. 527, 83 P.2d 560; Vandervort et al. v. Keen, 184 Okl. 121, 85 P.2d 405; Ex parte Herrin, Okl.Cr.App., 93 P.2d 21; and, State v. McMasters, 204 Minn. 438, 283 N.W. 767; State v. Fasekas, 223 Wis. 356, 269 N.W. 700, 701; Miami Laundry Co. v. Florida Dry Cleaning Board, 134 Fla. 1, 183 So. 759, 119 A.L.R. 956; Florida Dry Cleaning Board v. Everglades Laundry, 137 Fla. 290, 188 So. 380; Townsend v. Yeomans, 1937, 301 U.S. 441, 57 S.Ct. 842, 81 L.Ed. 1210.

Appellees urge that all persuasive force of the foregoing cases relied upon by appellant is lost when we consider that these decisions relied upon the doctrine established in the United States Supreme Court in the case of Adkins v. Children's Hospital, 261 U.S. 525, 43 S.Ct. 394, 67 L.Ed. 785, 24 A.L.R. 1238. The Adkins case, though long standing as a guide-post pointing the way for legislation in reference to price fixing for personal services or commodities, was later cancelled out and overruled, as appellees point out, by West Coast Hotel Company v. Parrish, 1937, supra. Therefore, they say, the cases so relied upon by appellant should no longer be a guide.

It is no doubt true that most, if not all, of such cases relied upon the Adkins case, not yet overruled. They were all decided before the time of the West Coast Hotel Company decision, hereinafter discussed.

Now to turn to the authority upon which appellees themselves rely: First, we have the West Coast Hotel Company case from the United States Supreme Court. In this case Adkins v. Children's Hospital, supra, was specifically overruled, the Supreme Court adopting much of the reasoning employed by Mr. Chief Justice Taft in the minority opinion in the Adkins case. The West Coast Hotel Company dealt with minimum wages for women. The reversal of the United States Supreme Court's former position came with the decision in Nebbia v. New York, 1934, supra, we might say, which approved a legislative act of the state of New York establishing minimum prices for milk. This was upon the theory of close connection between such prices and the question of the survival of their milk industry, and the act was, therefore, held to be in the interest of the general public and the public health.

In the now familiar West Coast Hotel Company case [300 U.S. 379, 57 S.Ct. 585, 81 L.Ed. 703, 108 A.L.R. 1330], the Washington statute fixing minimum hours for the labor of women in certain industries was upheld as a proper exercise of the police power. The court noticed also the question that there was discrimination because the regulation was not extended to all cases which it might possibly reach, and held this not vital to the validity of the act. It is not arbitrary discrimination, it was held, because the act did not extend to

men. "Even if the wisdom of the policy be regarded as debatable and its effects uncertain, still the Legislature is entitled to its judgment", the court further added. It was also observed in this opinion, to quote from the syllabi: "The reasonableness of the exercise of police power of the state must be considered in the light of current economic conditions."

It was said in the Louisiana case of Board of Barber Examiners v. Parker, supra [190 La. 214, 182 So. 485], that such declarations of the legislature "are presumed to be correct." This was one of the early cases, if not the earliest one, passing upon a statute similar to our own. The New Mexico act is, in fact, identical with the Louisiana statute and was passed subsequent thereto.

The Supreme Court of Louisiana first declared the act unconstitutional, substantially for the reasons which appellant urges against the validity of the New Mexico act, but, upon rehearing, a divided court reversed itself and held the act constitutional upon the authority of the changed position which the United States Supreme Court had taken in the then recently decided Nebbia case, 1934, supra. The Louisiana court upheld the act upon the theory that such laws and regulations as were there under consideration constituted a valid exercise of the police power of the state over a business vitally affecting public health. The theory that the means (identical with our own) selected by the legislature to regulate and control the barber

industry, including fixing and maintaining minimum prices by the Board, occupied a substantial relation to the public health and safety was there fully approved.

Immediately following the Louisiana decision, the identical question, there presented was before the Oklahoma Supreme Court in Herrin v. Arnold, 1938, supra [183 Okl. 392, 82 P.2d 982]. The Oklahoma law is identical with that of Louisiana and our own state, with exceptions not important in any discussion here. The Oklahoma court likewise upheld the constitutionality of their act. That court, in a well-reasoned and elaborate opinion, discussed separately each of the cases hereinbefore referred to as authority relied upon by appellant, and appraised them as of value only as an expression of what might have been good reason and in line with the trend of authority, if the Adkins case, supra, could be said still to be good law and to represent the present attitude of the United States Supreme Court. In this connection the Oklahoma court observed:

"In view of these considerations and the fact that the West Coast Hotel Company Case has intervened since these decisions, we do not think those cases can be taken as authoritative here. The opinions of the dissenting judges in these cases are more in keeping with the present decisions of the United States Supreme Court.

"To paraphrase the language of Mr. Chief Justice Hughes in the West Coast Hotel Company Case: 'And if the securing of sanitary barber shops is a legitimate

end of the exercise of state power, how can it be said that the requirement of the payment of a minimum price fairly fixed in order to meet those conditions is not an admissible means to that end?' * * *

"It follows that it cannot be said that the act transcends those provisions of either the State or Federal Constitution which deal with liberty, due process or freedom of contract."

· The subsequent Oklahoma cases of Jarvis v. State Board of Barber Examiners, supra, and Vandervort v. Keen, supra, followed the holding in the Arnold case. The same question was later before the Oklahoma Criminal Court of Appeals in Ex parte Herrin, 1938, supra, where the statute was again under attack as in the Arnold case, but it was there likewise held constitutional. The decisions from California, Florida, Alabama and Iowa, hereinbefore referred to, as relied upon by appellant, were again reviewed or noticed, and the Oklahoma court, resting its reasoning upon the philosophy of the Nebbia and West Coast Hotel Company cases, supra, held the act constitutional. This later Oklahoma decision was likewise based upon exhaustive consideration of authority, and references were made to most of the important cases that dealt with price fixing, particularly with cases having reference to barber board and like acts.

The Supreme Court of Minnesota in State v. McMasters, supra, likewise upheld the constitutionality of the barber industry act of that state. Appellant depreciates the weight which appellees would attach to the Minnesota act and the McMasters opinion, pointing out what he conceives to be vital differences between that act and our own. Essentially, it must be said however, the acts are alike. The principal difference lies in the fact that in Minnesota, as well as in Wisconsin, the governor administers the price fixing feature of the regulations through his ultimate control of the price fixing and regulatory machinery.

Under both the Wisconsin and Minnesota statutes, the governor must approve the rules and prices fixed after a hearing. He is given further authority to impose conditions for "the protection of consumers, competitors, employes" and others, St.Wis. 1935, § 110.04; Laws Minn.1937, c. 235, § 2, and may provide exceptions to and exemptions from the operation of the rules as made and presented to him, such regulations or standards as he may see fit, as a condition to his approval. We cannot say that the distinction between the New Mexico statute by which the governor appoints the Board (all members coming exclusively from those engaged in the profession or business of barbering) and the statutes of Minnesota and Wisconsin, is sufficient to influence a contrary holding. It will be noted that full examination into the various conditions presented, in order to determine the fairness and reasonableness of the proposed prices, are likewise afforded under our own statute before minimum prices may be fixed.

The Wisconsin court in State v. Fase-kas, supra, likewise makes reference to the views of the United States Supreme Court as expressed in decisions prior to the Adkins case, and observes the change in trend of the Supreme Court's holding beginning with the West Coast Hotel case, supra, when it upheld the constitutionality of their price fixing statute similar to our own, affecting the barber business.

The New Mexico act contains legislative findings, all identical with the Louisiana act. One is to the effect that the legislation is enacted "in the exercise of the police power of this State", and that the general purposes are "to protect the public welfare, public health and public safety"; and, that "the barber profession is hereby declared to be a business affecting the public health, public interest and public safety."

Appellant points to other portions of the findings, or preamble, of the act which recite the existence of "unfair, unjust, destructive, demoralizing and uneconomic trading practices" which have been and now are carried on in the operation of barber shops in the state of New Mexico. This situation, he suggests, is of no concern of the legislature and is wholly without the province of the police power to relieve, *unless* the barber business "is of such importance to the public that it is necessary for it to interfere in the protection of the public interests." It seems that in this challenge we find the crux to the whole problem.

Is the barber industry in fact of such great importance to the public? The legislature has said that it is, and its declaration to that effect must be given great weight.

As was said in Miami Laundry Co. v. Florida Dry Cleaning Board, 1938, 134 Fla. 1, 183 So. 759, 763, 119 A.L.R. 956, in supporting the constitutionality of a price fixing statute covering the laundry business, and inferentially overruling its earlier and contrary holding in State v. Ives, 123 Fla. 401, 167 So. 394: "There is no magic in the phrase, 'clothed with or affected with a public interest.' Any business is affected by a public interest when it reaches such proportions that the interest of the public demands that it be reasonably regulated to conserve the rights of the public and when this point is reached, the liberty of contract must necessarily be restricted. If the regulation involves the question of price limitation, it will be upheld unless clearly shown to be arbitrary, discriminating, or beyond the power of the legislature to enforce." Citing numerous cases.

We may not appraise all regulatory means adopted in the enforcement of the act, including the fixing of minimum prices, as serving perfectly the end sought to be attained. We examine the language of the act and look to the purposes sought to be achieved thereby to determine whether the case presented can withstand the general attack here made upon constitutional grounds. We are not concerned

with the uncertainty of the effects or wisdom of the legislation. West Coast Hotel Company case, supra.

■ We do not examine the act to determine whether some abuses may occur under this legislative license to the board to regulate and control in the interest of the public welfare and health. Our inquiry is directed to the broader question of whether the statute in the circumstances under which it operates is constitutional. We appraise the act on the basis of whether or not it presents a proper exercise of the legislative power; and not whether in its endeavor to exercise, under these circumstances and by such delegation of authority, the police power in the interest of public health, the Board might have acted unwisely.

In the Minnesota case of State v. McMasters, supra, the question of delegation of authority was attacked, because the power to fix prices under the Minnesota law was lodged in the governor who acted more or less directly through his appointive agency. But the court there observed that the power could as well be lodged in the governor as in a Board specially set up. We are unable to give controlling weight to appellant's argument that the method of control over prices under the Minnesota and Wisconsin acts distinguishes those statutes from our own sufficiently to detract appreciably from the strength of the authority from those states.

The McMasters decision was thereafter approved in McElhone v. Geror, 1940, 207 Minn. 580, 292 N.W. 414, 418, which dealt with that state's Fair Trade Act, and the court went further than we need, or undertake, to go here, when it said: "The police power * * * is not limited to protection of public health, morals, and safety. It extends also to 'economic needs'", citing Veix v. Sixth Ward Bldg. &' Loan Ass'n, 1940, 310 U.S. 32, 60 S.Ct. 792, 84 L.Ed. 1061. Continuing the Minnesota court observed: "Neither under the due process guaranty nor otherwise is the right to freedom of contract absolute. As with most other individual rights, it is qualified and limited by similar rights of others and those of government. Individual liberty must yield to the conflicting interests of society, acting through sovereign government. Individual will must give way to that of government when the latter is expressed in declared policy, enforced by constitutional means."

The same thought, is otherwise expressed in this brief but commanding language: "Liberty implies the absence of arbitrary restraint, not immunity from reasonable regulations and prohibitions imposed in the interests of the community." West Coast Hotel Company case, supra, citing from Chicago, B. & Q. R. Co. v. McGuire, 219 U.S. 549, 31 S.Ct. 259, 55 L.Ed. 328.

■ The record before us discloses the hazards to the health of that large portion of the public which patronizes barber shops, in the price cutting competition which prevails, absent regulation and fix-

ing of the minimum to be charged. The sanitary requirements set up by earlier act of 1935 (Chap. 111, Laws 1935), appellant urges, are in themselves sufficient to insure health protection and sanitary working conditions. But the record before us offers support to appellees'. contention that in price wars and where non-profitable charges are made for barbers' services, the sanitary safeguards are uniformly sacrificed. This was the situation which we have a right to assume the legislature intended to correct. We have its declaration to this effect to which we·will accord great weight.

The distinction appellant seeks to draw between the Oklahoma statute under consideration in the cases referred to and the New Mexico act is of no consequence. Under the Oklahoma statute the approval of a price agreement is not equivalent to an order of the Board, but the prices may be designated and fixed by the Board after investigation. Herrin v. Arnold, supra. Likewise, under our act, "in determining reasonable minimum prices, the Board shall take into consideration the necessary cost incurred in the particular judicial district in maintaining a barber shop in a clean, healthful and sanitary condition", and it may, after investigation upon its own initiative or upon a complaint of barbers, determine the "insufficiency" of the proposed or fixed prices to provide healthful service to the public, etc., and shall have authority to "vary or re-fix the minimum prices", etc. Sec. 12, Chap. 230, Laws of 1937. And the term "insufficient", as it relates to such minimum prices, will include prices which are too high as well as those which are too low. Nissen et al. v. Miller et al., 1940, 44 N.M. 487, 105 P.2d 324.

We recognize Ex parte Kazas, 22 Cal. App.2d 161, 70 P.2d 962, relied upon by appellant, as authority opposing the constitutionality of a statute similar to our own. It is clearly opposed to the authority relied upon by appellees and to much we have here said. It is quite obvious also that the California court took its position in that case notwithstanding the changed doctrine announced and followed in the Nebbia and West Coast Hotel Company cases, supra. We pass further consideration of this case, however, with the observation that in our opinion, it is contrary to the weight of· recent authority and the better reasoned decisions, as is also other authority relied upon by appellant.

Appellant challenges the statute upon the further ground that it is violative of the constitutional injunction that "the legislature shall enact laws to prevent trusts, monopolies and combinations in restraint of trade". Sec. 38, Art. IV, Const. Nobody disputes the fact that this language of the constitution enjoins upon the legislature a policy opposed to trusts, monopolies and combinations in restraint of trade, as the term is generally understood. The difference arises when we undertake to define the terms as they are to be applied to particular cases. We know it does not apply to cooperative marketing associations, for example. Elephant Butte

Alfalfa Ass'n v. Rouault, 33 N.M. 136, 262 P. 185. Obviously the question of monopoly and restraint of trade as respects such matters as are now under discussion, yields to a more important consideration, that of reasonably exercising the police power over a business or profession having a vital relation to public welfare and health. There is, therefore, no merit in this contention.

██ The statute is again assailed as being an unlawful delegation of legislative authority. This contention is likewise without merit. This same question was presented in the Oklahoma case of Herrin v. Arnold, 183 Okl. 392, 82 P.2d 977, 119 A.L.R. 1471, supra, and in Ex parte Herrin, Okl.Cr.App., 93 P.2d 21, supra. The question was likewise raised in the Minnesota case of State v. McMasters, supra, and other cases appellees rely upon and cite. In all of them the question was resolved against appellant's contention. We had a like question before us in Yeo v. Tweedy, 34 N.M. 611, 286 P. 970. That was a case involving the administration of underground streams, and it was unsuccessfully urged that there was an unlawful delegation of legislative power to ten per cent of the water users of the area, in that the act left it optional with such ten per cent of the water users to determine whether any particular underground stream should be governed thereby. We held there was no unlawful delegation of such power, and pointed to the fact that the determination of the question of whether any particular stream shall come under the jurisdiction of the state engineer is not made by ten per cent of the water users, but by the state engineer in whom the ultimate authority was properly reposed by the legislature. In making his findings that such underground bodies as have boundaries reasonably ascertained by scientific investigations or by surface indications, we said, he is carrying out and exercising an authority which the legislature properly determines he might have. Likewise, the power of ultimately fixing the minimum price to be charged for barber services is, by the legislature, properly lodged in the hands of the Board with authority to "vary or refix" from time to time the minimum price.

██ It will not be disputed that the declaration of the legislature as to the purposes to be achieved, and its finding as to the relation of the public health to the matter upon which the legislature acts, is entitled to great weight, though such declarations, of course, are not conclusive upon the courts. Board of Barber Examiners v. Parker, 190 La. 214, 182 So. 485, supra.

██ The courts have recognized a wide latitude in the legislature to determine the necessity for protecting the peace, health, safety, morals, and general welfare of the people. Powell v. Pennsylvania, 127 U.S. 678, 8 S.Ct. 992, 1257, 32 L.Ed. 253; Lawton v. Steele, 152 U.S. 133, 14 S.Ct. 499, 38 L.Ed. 385; Holden v. Hardy, 169 U.S. 366, 18 S.Ct. 383, 42 L.Ed. 780; Riley v. Massachusetts, 232 U.S. 671, 34 S.Ct. 469,

58 L.Ed. 788; Bosley v. McLaughlin, 236 U.S. 385, 35 S.Ct. 345, 59 L.Ed. 632.

In attempting to fix minimum prices for service or industry, the legislature must inevitably tread close to the line which marks the zone between lawful and illegal exercise of the police power. The phrase "affected with a public interest" probably can never be given an exact definition. This is probably desirable when we reflect upon the constant and ever changing conditions of our social and economic structure. This condition clearly implies the necessity for some degree of latitude allowable for obviously necessary judicial interpretation.

The problem invariably presented, when we appraise such legislative declaration, is that of determining whether, under the facts at the time before the court, the declaration that the subject treated is affected with a public interest or closely related thereto is not an overstatement. While all reasonable doubt will be resolved in favor of the legislative declaration, it is always subject to an inquiry by the courts into the circumstances urged in support of the claim that a private business is impressed with a public interest which will justify such regulation. Block v. Hirsh, 256 U.S. 135, 41 S.Ct. 458, 65 L.Ed. 865, 16 A.L.R. 165; Becker v. State, 7 W.W.Harr., Del., 454, 185 A. 92, 93.

Appellant's counsel, in an able brief, urges consideration of the question: "Where is such regulation to end if price fixing can apply to the barber trade and business?" It is pointed out that it is just as essential to maintain decent standards of living and sanitary working conditions for butchers and bakers. Their activities more uniformly touch a greater portion of the people, and in a relationship equally fraught with dangers to health from lack of careful observation of sanitation requirements, they say. Much can be said upon this question, as indeed much has already been said by other courts, and it does present a most challenging query. But the answer must await the actual presentation of the problem to be solved.

We say, simply, that in the case at bar, upon the record before us, we hold the act not arbitrary, discriminatory or unreasonable in the sense that it offends either our own or the Federal Constitution, and that the appeal must fail upon all grounds urged.

Finding no error, the judgment will be affirmed, and it is so ordered.

ZINN, SADLER, and BICKLEY, JJ., concur.

BRICE, C. J., dissents.