THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* LOUIS BERNSTEIN, Appellant.

Second Department, December 30, 1932.

*Louis H. Solomon,* for the appellant.

*Henry J. Walsh, Assistant District Attorney [William F. X. Geoghan, District Attorney,* with him on the brief], for the respondent.

CARSWELL, J. The information charged the defendant Bernstein, who is not licensed to sell drugs, with a violation, on February 24, 1931, of section 1355 of the Education Law in the operation of a store in Brooklyn. That section, so far as pertinent, reads: " Unauthorized use of terms. *No person or corporation shall hereafter carry on, conduct or transact business* under a name which contains as a part thereof the words ' drugs,' ' medicines,' ' drug store ' or ' pharmacy,' or similar terms or combinations of terms, *or in any manner by advertisement, circular, poster, sign or otherwise describe or refer to the place of business conducted by such person or corporation by the terms ' drugs,' ' medicines,' ' drug store ' or ' pharmacy '* * * *."

The prohibition of the statute was formerly directed against the use of the terms " drug store " or " pharmacy." It was broadened by amendment (Laws of 1930, chap. 835).

There are two means of violating the statute: (1) By the use of the interdicted words in the trade name of an unlicensed person. (2) By the use of the terms " drugs," " medicines," " drug store " or " pharmacy " in advertising the place of business conducted by an unlicensed person.

The information charged a violation of the statute in both particulars. The defendant maintained on his store a sign which read " Boro Cut Rate Store." Beneath that phrase, in small letters, appeared the words " We Sell " and in large letters the words " Drug Sundries." Below that appear, among others, the words " Patent Medicines." The sign does not constitute a violation of section 1355 in so far as the trade name is concerned. The trade name does not contain any of the words banned by the statute. There is, however, a violation of the statute so far as concerns the use of interdicted terms in advertising the place of business conducted by the defendant.

The statute and the related provisions in the article on " Pharmacy " are to be construed so as to evince a logical relationship to each other and to further the purpose of saving the public from being misled with respect to whether or not the store into which they are being invited is or is not a drug store. Section 1355 should not be construed so as unduly to impair the right of mer-

chants to sell commodities permitted to be sold under the statutes by those who are not licensed as a pharmacist or a druggist.

Section 1360 of the Education Law regulates the sale of poisons enumerated in Schedules " A " and " B " of section 1364.

Section 1361 directs that the article headed " Pharmacy," in which these several sections are found, shall not be construed to apply (1) to sale of drugs, etc., at wholesale when not for the use or consumption of the purchaser; (2) to the sale of specified poisons for destroying insects; (3) to the sale of any substance for use in the arts; (4) " to the manufacture *and* sale of proprietary medicines;" (5) to the sale by merchants·of the articles in Schedule " C."

Section 1364 contains Schedules " A," " B " and " C." Schedules " A " and " B " are an enumeration of various kinds of poison. Stores conducted by non-licensed persons may not sell the articles in Schedules " A " and " B."

Unlicensed retailers may sell the articles enumerated in Schedule " C." This enumeration does not in terms include proprietary remedies, colloquially called patent medicines. The enumeration in Schedule " C " includes many commodities which take on the quality of staples of a non-poisonous character, such as flaxseed, licorice, rochelle salt, extract of beef, quinine pills, cathartic pills, etc. The privilege granted to unlicensed persons to sell the articles enumerated in Schedule " C " must be availed of with the limitation imposed with respect to the manner of advertising the sale thereof contained in section 1355. These provisions evince a purpose to permit the sale of those enumerated articles, usually found in drug stores, by persons who are not conducting drug stores or who have these goods for sale as an incident to the sale of other merchandise, provided they do not advertise the sale thereof under the term " drugs." The seeming reason for denying the right to use the terms interdicted in section 1355 to advertise these commodities for sale is to protect the public. When one buys such articles in a drug store conducted by a licensed person, the purchase is presumably had under a more skillful supervision than occurs when the purchase is made from an unlicensed person. The statute permits the sale by an unlicensed person under circumstances that protect the public from being misled as to presence or absence of benefits, if any, of which they might desire to avail themselves in making a purchase from a licensed person skilled in the handling of drugs.

While these articles may be sold by an unlicensed person, they may not be advertised for sale under the generic terms interdicted by section 1355. They may not, therefore, be advertised under the generic words " drugs " or " medicines." The placing of the

word " sundries " after the word " drug " does not save from the inhibition of the statute. The statute prohibits the use of the word " drugs " or " medicines " " in any manner by advertisement." Moreover, the word " sundries " means miscellanies or various items which may be considered together, without being separately specified or identified. The statutory violation is made more clear by transposing the words " drug sundries." They would then, in meaning, advertise " various miscellaneous unspecified drugs," a form of advertising within the ban of the statute in a store conducted by an unlicensed person.

The use of the term " patent medicines " presents a different problem. The phrase is colloquially used to describe compounds or proprietary remedies sold in original packages, that is, they are not packaged by the retail vendor. In buying them one does not rely on the real or presumed skill of the vendor. Schedule " C " in section 1364 does not in terms authorize the sale of these compounds or remedies thus packaged, but section 1361 excludes " the manufacture and sale of proprietary medicines " from the regulations in the article on *Pharmacy* in the Education Law, which includes section 1355.

Therefore, the ban on the use of the word " medicine " in section 1355 does not fall upon advertisements for the sale of " proprietary medicines "— colloquially referred to as patent medicines. If the legislative purpose was to prevent unlicensed retailers from advertising the sale of proprietary remedies or medicines under the phrase " patent medicines," the exemption from the scope of the article on *Pharmacy* contained in section 1361 would have to be narrowed so as to express such a legislative purpose.

Moreover, the generic term " medicines " has a meaning in the public mind vastly different from the phrase " patent medicines." The latter are put up by manufacturers or compounders under trade names, and in buying them the public does not rely upon the presumed or actual skill of the retailer, such as is the case when other compounds or prescriptions are purchased from retailers. This interpretation of the effect of the statute requires a holding that unlicensed retail vendors may advertise these proprietary remedies as patent medicines.

This unlicensed defendant violated section 1355 in his advertisement which used the word " drugs " in the phrase " drug sundries," even though he be referring to articles which he is permitted to sell under the statute, but which statute limits his privilege to sell them by requiring him to avoid the use of the word " drug " so that the public may not be misled into thinking that he is. a

licensed pharmacist or druggist. The statute confines him to the advertising of the sale of these articles in Schedule " C " of section 1364 by their individual names.

These views make unnecessary a consideration of the evidence, improperly adduced, which seems to indicate a violation of another provision of law, not charged in the information, in respect to the vending by an unlicensed retailer of a compound not authorized to be sold by such a person under section 1364, Schedule " C."

The judgment of conviction should be affirmed.

Present — LAZANSKY, P. J., KAPPER, CARSWELL, SCUDDER and DAVIS, JJ.

Judgment of conviction of the Court of Special Sessions of the City of New York, Borough of Brooklyn, unanimously affirmed.