297 P.2d 325

STATE of New Mexico, Appellant,

v.

R. D. COLLINS, Appellee.

No. 6045.

Supreme Court of New Mexico.

April 25, 1956.

Rehearing Denied May 23, 1956.

Richard H. Robinson, Atty. Gen., Paul L. Billhymer and Fred M. Standley, Asst. Attys. Gen., for appellant.

G. T. Watts, Jerome L. Cathey, Roswell, for appellee.

LUJAN, Justice.

This appeal brings here for consideration a challenge to the constitutionality of Section 3 of Chapter 124 of the Laws of 1951, Section 67–9–15 of 1953 Comp.

Defendant, R. D. Collins, on the 6th day of September, 1954, was charged· in a

criminal information with a violation of the above section of the act which provides:

"Restrictions on use of designated terms—Emergency drugs dispensed by physicians, dentists or veterinarians.—No person shall carry on, conduct, or operate a drug store or pharmacy, or transact any business under a name which contains as a part thereof the words 'pharmacist,' 'pharmacy,' 'apothecary,' 'apothecary shop,' 'chemist's shop,' 'drug store,' 'druggist,' 'drugs,' 'drug sundries,' 'prescriptions,' or any word or words of similar or like import, or in any manner by advertisement, circular, poster, sign, or otherwise describe or refer to the place of business conducted by him by the terms 'pharmacy,' 'apothecary,' 'apothecary shop,' 'chemist's shop,' 'drug store,' 'drugs,' 'drug sundries,' 'prescriptions,' or any word or words of similar or like import, unless the place of business so conducted is a drug store or pharmacy in which a registered pharmacist is constantly employed on a regular basis."

The defendant (appellee) moved to dismiss the information on the following grounds: (1) That it is a deprivation of private property without due process or compensation; (2) it constitutes an unreasonable exercise of the police power without reasonable regard toward the health, morals and welfare of the public; (3) it is discriminating in scope and tends to create a monopoly by the pharmacists.

On June 29, 1955, the court made and entered its decision which reads as follows:

"* * * 1. That it is the decision of the Court that the defendant's motion herein be sustained.

"2. The court is rather reluctant to make this decision, as any Court is reluctant to declare a law unconstitutional. However, the Court can see only one reason for the existence of this law. It would have to come under the Police power of the State to preserve the health and safety of the public. The Court can see no way in which the law does this, and on the other hand, it is an unreasonable restraint of trade, and takes property without due process of the law, and is therefore unconstitutional."

On July 12, 1955, the court, based on its decision, made and entered an order dismissing the information, and the State appeals.

It was stipulated by and between the parties: "That the defendant at the time of the filing of the information, and on the date alleged in the information, was operating a retail store * * * under the name and style of 'Packaged Drug Sundries', and that he displayed a sign or signs advertising the name of the store under that name and style; that he was open and engaged generally in the retail business, * * * and sold various items such as aspirin, anacin, milk of magnesia, castor oil, vitamin capsules, nose drops, and the

·usual patent medicines like that, but sold in unbroken packages; that it is not contended by the State that he was compounding prescriptive medicines, and that neither is it contended that he was selling patent medicines from broken packages, and further that he did not at that time have on duty a regularly licensed prescription druggist."

"Mr. Watts: I don't believe he is charged with operating a drug store. He is only charged with operating a business under the name that contained the words 'Drug Store,' or 'Drug Sundries,' and did not have employed a registered pharmacist on duty, and that is the section of the statute I am prepared to argue."

The State contends, and correctly so, that the provision of the Act in question does not violate any constitutional provision of either the Constitution of the United States or the Constitution of the State of New Mexico.

█ We regard the business of selling drugs and medicines as so intimately connected with and having such a vital relationship to the health, safety and welfare of the public that there ought not to be any doubt that its regulation falls within the authority of the Legislature in the exercise of its police power. A determination of what is reasonably necessary for the preservation of the public health, safety and welfare of the general public is a legislative function and should not be interfered with, save in a clear case of abuse.

█ By enacting the present statute, which comes peculiarly within the province of the police power, the Legislature has determined that to properly safeguard the health, safety and welfare of the public it is necessary to prohibit any person from using the words "drug store" or "drug sundries" or any words of similar or like import in advertising their place of business, unless the place of business so conducted is a drug store or pharmacy in which a registered pharmacist is constantly employed on a regular basis. That determination must be given great weight. Every presumption is to be indulged in favor of the validity of the statute.

The statute is neither discriminatory nor in restraint of trade and does not tend to create a monopoly by the pharmacists as contended by the appellee. Section 67-9-15, supra, further provides: "That nothing in this act contained shall be construed * * * to prevent the sale of non-narcotic, non-poisonous, or non-dangerous patent or proprietary medicines by non-registered persons or stores, when sold in original packages." This proviso evinces a purpose to permit the sale of certain medicines usually found in legitimate drug stores by persons not conducting a drug store or who have these medicines for sale as an incident to the sale of other merchandise, provided they do not advertise their place of business under the words

"drug store" or "drug sundries" or words of similar or like import. The field is left wide open to every one to sell exempted medicines, subject only to the inhibition of the use of such words as connote the establishment to be a drug store.

We held in the case of Arnold v. Board of Barber Examiners, 45 N.M. 57, 109 P. 2d 779, that the question of monopoly and restraint of trade must yield to a more important consideration, that of reasonably exercising the police power of a business or profession having a vital relationship to public · welfare and health, and we reaffirm that holding.

▉ It is undoubtedly the right of every citizen to follow any lawful calling, business or profession he may choose, subject only to such restrictions as are imposed upon all persons. State v. Spears, 57 N.M. 400, 259 P.2d 356, 39 A.L.R.2d 595. This right may in many respects be considered as a distinguishing feature of our republican institutions. All businesses, trades and professions are open to every one on like conditions. All may be pursued as sources of livelihood. The interest, or, as it is sometimes termed, the estate in them, that is the right to continue their prosecution, is often of great value to the possessors, and cannot be arbitrarily taken from them, any more than their real or personal property can thus be taken. But there is no arbitrary deprivation of such right where its exercise is not permitted because of a failure to comply with conditions imposed by the State for the protection of the public. The power of the state to provide for the general welfare of its people authorizes it to prescribe such regulations as in its judgment are reasonably calculated to secure the public against deception and fraud. So long as they bear a valid relationship to the evil sought to be prohibited, no objection to their validity may be successfully interposed. It is only when they have no relation to such business or profession that they can operate to deprive one of his right to pursue a lawful business or vocation. Appellee insists that by being prohibited from advertising his place of business as "Packaged Drug Sundries" he is deprived of a vested right without due process of law. We perceive nothing in the Act which indicates an intention of the legislature to deprive him or any one else of his or their rights.

The offense with which the defendant is charged falls literally within the language of the proscribed act. "No person shall * * * transact any business under a name which contains as a *part thereof* the words * * * 'drug sundries,' * * * or any word or words of similar or like import, * * * unless the place of business so conducted is a drug store or pharmacy in which a registered pharmacist is constantly employed on a regular basis." 1953 Comp. § 67–9–15 (Emphasis ours.)

No doubt the legislature had in mind prohibiting not alone the open and blatant advertising ·of a business enterprise as a

"drug store", when it was not, but as well sought to minimize the opportunities for establishments, not drug stores, to mislead the public into believing they were or that they had a department which could fill prescriptions and supply other services of a well regulated drug store or apothecary shop. This he was not permitted to do without the services of a registered pharmacist "constantly employed on a regular basis."

We entertain no doubt about the act's validity so far as the challenges here made against it are concerned. It offends neither the state nor the federal constitution in the respects urged in the motion to dismiss nor in the decision of the trial court.

In reaching the decision we do, we have not overlooked the case of Pike v. Porter, 126 Mont. 482, 253 P.2d 1055, but to the extent that our holding herein conflicts with the views expressed in that case, we decline to follow it. We do not share the apprehension expressed in that opinion that the act will give a monopoly to the registered pharmacists in the sale of patent medicines. Indeed, the defendant in the case at bar might very easily have framed a sign indicating the sale of packaged patent medicines without violating the provision of the act in question.

For the reasons stated, the judgment of the trial court will be reversed and the cause remanded for further proceedings in conformity with the views herein expressed.

It is so ordered.

COMPTON, C. J., and SADLER, J., concur.

KIKER and McGHEE, JJ., dissenting.

KIKER, Justice (dissenting).

This appeal grows out of a criminal prosecution. An information was filed in the District Court of Lincoln County charging the defendant with the violation of section 67–9–15, N.M.S.A.1953. The section of the statute is quoted in the majority opinion. No complaint was made of the fact that the information charged the defendant with the doing of one act "and/or" another. State v. Smith, 51 N.M. 328, 184 P.2d 301.

A motion was made by defendant-appellee to dismiss the information on the claim that the section of the law under which the prosecution was brought is in violation of both the United States Constitution and that of the State of New Mexico in that it is a deprivation of private property without due process of law. Later, at the hearing on the motion, an addition to the motion was allowed, alleging that the section of the law in question constitutes an unreasonable exercise of the police power in violation of Article 2, § 18 of the Constitution of New Mexico and the 14th Amendment to the Federal Constitution; and for the reason that the section is discriminatory in its scope and tends to create a monopoly by the pharmacists in the handling of packaged drugs and drug sundries.

190

Before considering the propositions of law raised by the amended motion, the parties entered into a stipulation as to the facts, which stipulation is set forth in the majority opinion. The case was then in exactly the same condition as if witnesses had been called, examined and cross-examined. All of the facts in the case were, therefore, before the court at the time of argument on the motion to dismiss. The court ruled with the defendant and entered judgment of dismissal. The State appealed.

The stipulation entered into by the parties and which was considered by the court points clearly, I think, to the vice in the statute involved. That which the stipulation shows the appellee was doing in his place of business was perfectly innocent and in full compliance with the law. He was not engaged in the sale of narcotic, poisonous or dangerous medicines or drugs. He offered for sale only articles in original unbroken packages. The stipulation shows that defendant is guilty of no wrong unless it was criminal conduct for him to advertise his lawful business by a sign on his building, "Packaged Drug Sundries".

In testing the constitutionality of the Act in this case, as in all, we must begin with the presumption that the Act is constitutional; and it will be sustained unless the conflict between the Act and the Constitution is made to clearly appear. In re Southern Pacific Co., 37 N.M. 11, 16 P.2d 402; State ex rel. Hannah v. Armijo, 38 N.M. 73, 28 P.2d 511; State ex rel. New Mexico Dry Cleaning Board v. Cauthen, 48 N.M. 436, 152 P.2d 255.

In State ex rel. New Mexico Dry Cleaning Board v. Cauthen, supra, Mr. Justice Sadler, then Chief Justice, said:

"The question presented thus reduces itself to a consideration whether, with the price fixing provisions of the act eliminated by our decision in State v. Alexander, supra [46 N.M. 156, 123 P.2d 724], the defendant has successfully challenged it as representing an unreasonable and unwarranted exercise of the police power. This will be answered by deciding whether, as against the attack here made, it bears any reasonable or valid relation to the public safety, health or morals. For, if it does, our inquiry must end, the policy and wisdom of legislation touching such matters being of purely legislative concern." 48 N.M. at page 440, 152 P.2d at page 257.

What reasonable or valid relation exists between a sign on the window of a store reading "Packaged Drug Sundries" and the public safety, health or morals? If the sign appears on the window of a building and one enters inquiring for poisonous drugs or for drugs other than packaged drugs commonly sold in grocery stores, variety stores and elsewhere, he can suffer no more than disappointment at not finding any such article for sale in such a store.

His health is in no way injured; his safety is in no way imperilled; and his morals, if good when he entered, cannot have suffered. That is true as to everyone in the community and those passing through. A mere sign on the window which points to nothing injurious for sale on the inside of the building cannot affect the public health, safety or morals.

In Pike v. Porter, 126 Mont. 482, 253 P.2d 1055, the facts were that plaintiffs, since 1925, had operated a store under the name of Superior Drug Store. In that store there were carried and sold household drugs, confections, paints and miscellaneous merchandise, but no prescriptions were filled and no pharmacy as defined by law was in operation. There was no registered pharmacist in the store.

The Montana law is substantially the same as ours. Section 66-1522, RCM 1947, provides:

"Use of words 'drug store,' 'pharmacy,' etc. It shall be unlawful for any person to carry on, conduct or transact a retail business under a name which contains as a part thereof, the words, 'drugs,' 'drug store,' 'pharmacy,' 'medicine,' 'apothecary,' or 'chemist shop,' or any abbreviations, translations, extension or variation thereof; or in any manner by advertisement circular or poster, sign or otherwise, describe or refer to the place of business conducted by such person by such term, abbreviations, translation, extension or

variation unless the place so conducted is a pharmacy within the meaning of this act, and duly licensed as such and in charge of a registered pharmacist."

Portions of two other pertinent sections of the Montana Code are:

§ 66-1525(c) "* * * nothing in this act shall prevent the sale of common household preparations and other drugs, provided stores selling same are licensed under the terms of this act."

§ 66-1508(a) "The state board of pharmacy shall upon application upon such forms as it may prescribe, and upon the payment of an annual fee of three dollars ($3.00), license pharmacies and stores other than a pharmacy wherein may be sold ordinary household or medicinal drugs prepared in sealed packages or bottles by a manufacturer, qualified under the laws of the state wherein such manufacturer resides. The name and address of such manufacturer shall appear conspicuously on each package sold by such licensee. It shall be unlawful for any such store to sell such household medicinal drugs, without first having secured such license and thereafter keeping the same in force by proper renewal, provided, also, that nothing herein shall be construed to prevent any vendor from selling any patent or proprietary medicine in the original package when plainly labeled, nor such

non medical articles as are usually sold by such vendors."

The only practical difference between the Montana law and the New Mexico law is that in Montana any store selling any kind of medicine or drugs is required to have a license from the pharmacy board. That is not true in New Mexico. § 67–9–18, § 60–1–1, § 60–1–5, N.M.S.A.1953.

Remembering now that the applicant for the license conducted its business under the name of Superior Drug Store, we quote from the opinion of the Montana court:

"Hence it is clear that plaintiffs holding a license under the Act in question had the right to sell everything which they do sell even though the store is not in charge of a registered pharmacist.

"Can they be deprived of the use of the name 'drug' in advertising their business? We think not, because we believe the means employed by the legislature, viz., the attempt to prevent the use of the name 'drug' in its advertising has no reasonable relation to the public health or safety but tends merely to create a monopoly in the sale of drugs.

"It attempts to give to registered pharmacists the right to sell the drugs in question by the use of the word 'drug' in advertising and excludes that right from every other person. It makes no requirement that the regis-

tered pharmacists who may use the name and sell the drugs make any analysis, inspection or examination of the drug to be passed on by him to the purchasing public." 253 P.2d at page 1056.

Again we quote from the decision in Pike v. Porter, supra:

"There is nothing in the statutes that requires those who are authorized to use the name 'drug' in advertising household remedies to in anywise protect the public or to give advice that would tend to promote their safety, health, or welfare. The provision excluding those who are not registered pharmacists from the use of the word 'drug' in advertising household drugs bears no reasonable relationship to the protection of human life, health or safety but merely discriminates in favor of a certain class and is in consequence unconstitutional and invalid" 253 P.2d at pages 1056–1057.

See also Noel v. People, 187 Ill. 587, 58 N.E. 616, 52 L.R.A. 287, 79 Am.St.Rep. 238; State v. Stephens, 102 Mont. 414, 59 P.2d 54; State v. Wood, 51 S.D. 485, 215 N.W. 487, 54 A.L.R. 719.

In State v. Stephens, supra (Mont.1936), the defendant, a grocer, was convicted upon a charge of selling aspirin in original packages without a license. This case is interesting for the reason that it is a criminal case and in addition involves the ac-

tual sale of aspirin and not the mere advertising that packaged drugs could be bought in defendant's store. The charge was that the merchant sold an original package without having a license to do so and that he was not a physician, wholesale dealer or registered pharmacist and did not have a registered pharmacist in charge of his store.

At the time, a section of the Montana law made it unlawful for any person other than a registered pharmacist to sell any kind of medicine or drugs or to institute or conduct any kind of store wherein drugs were sold unless a registered pharmacist was in charge of the business.

This is, I think, an exceptionally well-considered case. The writer of the opinion discussed a good many cases having to do with statutes similar to that of Montana. All of the cases had to do with sales, not merely with advertising.

In reaching its decision, the Montana court quoted from Noel v. People (Ill.), supra, and from State v. Wood (S. D.), supra, another well-considered case.

As to restricting the sale of common remedies and proprietary medicines to pharmacists, the court in State v. Stephens, supra, spoke as follows, quoting State v. Wood, supra:

"'It is argued that pharmacists have knowledge of the effect of medicines they sell; this is no doubt some protection against accidental injury resulting from ignorance, but it is not plain that pharmacists do know the ingredients of patent and proprietary medicines, or that they are required to use or possess any knowledge in making a sale of such medicines. If one has a doctor's prescription filled at a drug store, he buys not the medicine alone, but the druggist's knowledge and skill in dispensing it; but if he were to buy Watkins' Pain-Oleum at the drug store, what more would he buy than if he bought elsewhere? Certainly neither knowledge nor skill, unless the druggist is bound to know the ingredients and their effects upon the human system, and to warn a purchaser, if there be any danger in its use. * * * It does not seem that merely selling an article, though that article be medicine, can be classed as the practice of a learned profession.'"
59 P.2d at page 57.

I approve of the reasoning of the Montana cases.

There is one case and only one which on its face lends apparent support to the opinion of the majority here, but which, I think, when seriously considered, fails to do so and even as to part of the declarations found in the opinion there is support for the position taken in this dissent. This is the case of People v. Bernstein, 237 App.Div. 270, 261 N.Y.S. 381, 382, decided in 1932.

The defendant Bernstein was convicted upon a charge of violation of a section of the New York law, as follows:

" 'Unauthorized use of terms. No person or corporation shall hereafter carry on, conduct or transact business under a name which contains as a part thereof the words "drugs", "medicines", "drug store" or "pharmacy", or similar terms or combinations of terms, or in any manner by advertisement, circular, poster, sign or otherwise describe or refer to the place of business conducted by such person or corporation by the terms "drugs", "medicines", "drug store" or "pharmacy".' "

The court stated that there were two methods of violating the statute: "(1) By the use of the interdicted words in the trade-name of an unlicensed person. (2) By the use of the terms 'drugs,' 'medicines,' 'drug store,' or 'pharmacy' in advertising the place of business conducted by an unlicensed person."

The defendant had a sign on his store which read Boro Cut Rate Store, beneath which were the words "We Sell Drug Sundries." The words "We Sell" were in small letters; the words "Drug Sundries" were in larger letters. As a last line of the sign were the words "Patent Medicines."

Section 1364 of the New York pharmacy act contained schedules which listed various items, some of which must be sold by licensed pharmacists only and others which might be sold by non-licensed persons in their stores. Schedules A and B had to do with various kinds of poisons. Non-licensed persons were forbidden to sell these items but persons without a license could sell articles enumerated in Schedule C. Schedule C did not deal in generalities; it enumerated commodities having a non-poisonous character, so that it was pointed out exactly what could be sold by persons having no license.

The court said, among other things, that the provisions of the act permit the sale of articles enumerated in Schedule C, provided such sale is not advertised under the term "drugs".

The court said that the apparent reason for denying the right to advertise was to protect the public and argued that when one buys an article in a drug store conducted by a licensed pharmacist, the purchase is made "under a more skillful supervision than occurs when the purchase is made from an unlicensed person." 261 N.Y.S. at pages 383–384. The argument continues that the provision proscribing advertising matter is to "protect the public from being misled as to presence or absence of benefits, if any, of which they might desire to avail themselves in making a purchase from a licensed person skilled in the handling of drugs." 261 N.Y.S. at page 384. The placing of the word "sundries" after the word "drugs" did not save the act of the defendant from the inhibition of the

statute and the court said: "The statute prohibits. the use of the word 'drugs' or 'medicines' 'in any manner by advertisement.'" 261 N.Y.S. at page 384.

The New York court held that the defendant violated the section of the statute by using the words "Drug Sundries", "even though he be referring to articles which he is permitted to sell under the statute, but which statute limits his privilege to sell them by requiring him to avoid the use of the word 'drug' so that the public may not be misled into thinking that he is a licensed pharmacist or druggist." 261 N.Y.S. at page 385.

Because of the use of the words "Drug Sundries" the New York court held that the judgment of conviction should be affirmed; but as to the words "Patent Medicines", the court held there was no violation of the section proscribing the use of the word "medicines". The court held that where the word "patent" was a prefix to the word "medicines" there was no violation of the statute while holding that the use of "sundries" as a suffix to "drug" was a violation. The reasoning of the court is difficult for me to understand. The court says that the general term "medicines" has a meaning in the public mind vastly different from the phrase "patent medicines". I say that the use of the phrase "drug sundries" has a meaning in the public mind vastly different from the word "drugs". There have been, all over the State of New Mexico, in the smaller towns, stores selling what are known as "drug sundries." This is a matter of common knowledge to all residents of New Mexico who have traveled about the state to any considerable extent. Some of the communities in which such stores are located do not even have a physician; many of them do not have a drug store in which prescriptions are compounded. The business of such stores is to furnish the public with what are known as home remedies and also numerous other useful articles. In such stores, as well as in pharmacies, whether in small town or city, many articles other than medicines or drugs are sold. This particular fact was well put in the words of Mr. Justice McGhee when he said: " * * * the writer would not be unduly surprised to see a tractor offered for sale in one of these (department drug) stores, * * *." Save-Rite Drug Stores, Inc., v. Stamm, 58 N.M. 357, 362, 271 P.2d 396, 399.

Even if the words "drug sundries" could have the effect, as suggested by the New York court, of misleading some of the public into thinking that the store selling such articles would necessarily have a licensed pharmacist who would fill prescriptions, I inquire what harm would thereby result? If someone believed that a store had a registered pharmacist where there was none, would the public morals in any way suffer? Would the public peace be seriously disturbed? How could such a belief affect the public health or welfare? These ques-

tions are all asked, of course, upon the premise that nobody within the place of business ever purported to act as a registered pharmacist. The stipulation in this case shows that only goods in original packages were sold. The advertising in this case was by sign reading "Packaged Drug Sundries". If a prefix of "patent" to "medicines" in New York can make advertising by use of the two words harmless, I say that the prefix "packaged" to "drug sundries" should make the three words harmless under our statute.

Before leaving the New York case, it should be said that there was no question raised in that case of the constitutionality of any part of the pharmacy act in that state. Our case does raise the question of the constitutionality of the New Mexico statute as to its prohibition of advertising that which may be lawfully done in any mercantile establishment. I consider the New York case of no support whatever for the majority opinion in this case.

Even if the New York case could be used to support any proposition in connection with our case, then, for my part, I much prefer the reasoning of the Montana and South Dakota cases cited and quoted from above.

For the reasons above stated, I dissent.

McGHEE, Justice.

I concur in the dissent.