The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

Opinion Number:

Filing Date: February 27, 2025

**NO. S-1-SC-39826**

**JOHN MARTENS and PAT MARTENS,**
**Individually and Co-Personal**
**Representatives of the ESTATE OF V.M.,**

Plaintiffs-Respondents,

v.

**CITY OF ALBUQUERQUE, JOHN DOES**
**1-10, and JANE DOES 1-10, Individually,**

Defendants-Petitioners.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Denise Barela-Shepherd, District Judge**

Office of the City Attorney
Lauren Keefe, City Attorney
Stephanie M. Griffin, Deputy City Attorney
Albuquerque, NM

for Petitioners

Bowles Law Firm
Jason Bowles
Albuquerque, NM

Gorence Law Firm, LLC
Robert J. Gorence
Albuquerque, NM

for Respondents

**OPINION**

**BACON, Justice.**

{1}     Defendant-Petitioner City of Albuquerque (the City) challenges the Court of Appeals' ruling that written notice by Plaintiffs-Respondents John Martens and Pat Martens (Respondents), individually and on behalf of the Estate of V.M., was sufficient under NMSA 1978, Section 41-4-16(A) (1977) of the New Mexico Tort Claims Act (TCA), NMSA §§ 41-4-1 to -27 and 41-4-30 (1976, as amended though 2020).[1] *See Martens v. City of Albuquerque*, 2023-NMCA-037, ¶ 12, 531 P.3d 607. Section 41-4-16(A) requires persons, such as Respondents, who assert tort claims against a public body to send notice of their claims to the public body and sets out the requirements for such notice. Because the notice Respondents sent to the City was sufficient under Section 41-4-16(A) of the TCA, we affirm the Court of Appeals.

**I.     BACKGROUND**

{2}     Central here, Section 41-4-16(A) ("Notice of Claims") of the TCA provides:

> Every person who claims damages from the state or any local public body under the Tort Claims Act shall cause to be presented to the risk management division for claims against the state, the mayor of the municipality for claims against the municipality, the superintendent of the school district for claims against the school district, the county clerk of a county for claims against the county, or to the administrative head

---

[1]Section 41-4-30 was explicitly enacted as a "new section of the Tort Claims Act." 2010 N.M. Laws, ch. 22, § 1.

of any other local public body for claims against such local public body, within ninety days after an occurrence giving rise to a claim for which immunity has been waived under the Tort Claims Act, *a written notice stating the time, place and circumstances of the loss or injury*.

(Emphasis added.)

{3}	On November 17, 2016, Respondents sent their "Notice of Claims Resulting in Injury/Death Per [Section 41-4-16]" (the Notice) to the Bernalillo County Clerk, the New Mexico Risk Management Division, and the Mayor of the City of Albuquerque. The text of the Notice read in full:

> Re: Incident on or about, in the City of Albuquerque, County of Bernalillo, State of New Mexico, in which the minor child [V.M.] suffered serious injuries, and subsequently death, after the New Mexico Corrections Department Probation and Parole Division, located at 111 Gold Ave. SE, Albuquerque, NM 87102, the New Mexico Children, Youth and Families Department [(CYFD)], located at 1031 Lamberton Pl. NE, Albuquerque, New Mexico 87107, and the Second Judicial District Court in Bernalillo County, located at 400 Lomas Blvd. NW, Albuquerque, New Mexico 87102, failed to properly monitor her alleged killer, Fabian Gonzales, on probation; this is the Notice of Claims pursuant to [Section 41-4-16 of the TCA].

> To Whom It May Concern:
> Please take notice that Michael Martens, Wrongful Death Personal Representative of the Estate of [V.M.], may make a claim or claims against the County of Bernalillo, and all affected departments, agencies and divisions within the State, County, and City arising out of the incident involving an accident which took place on August 24, 2016, when Fabian Gonzales, along with two others (Michelle Martens and Jessica Kelley), drugged, sexually assaulted, tortured and killed 10-year-old [V.M.], after the State of New Mexico, County of Bernalillo, and City of Albuquerque generally engaged in tortious conduct and

2

circumstances leading to injury and death of [V.M.], including failure to properly monitor Fabian Gonzales on probation.

Notice is provided that claims may be brought regarding the negligence of the State of New Mexico, County of Bernalillo, and City of Albuquerque, which resulted in the death of [V.M.] on or about August 24, 2016.

{4} The City's response letter of December 15, 2016, to Respondents' counsel relevantly included the following paragraphs:

Regarding the claim against the City . . . , it was determined that subsequent to a murder investigation by the Albuquerque Police Department [(APD)], the manner in which the crime was investigated was appropriate and in accordance with departmental policies and procedures.

Based on these circumstances and in the absence of any verifiable City negligence, there is no legal or factual basis by which your client's claim can be honored, and we are obliged to respectfully deny it.

We note the City's letter inherently acknowledges receipt of the Notice while referring only to the City's investigation of events *subsequent to* V.M.'s death, whereas the Notice refers to "tortious conduct and circumstances *leading to* injury and death of [V.M.]." (Emphasis added.)

{5} Respondents filed a complaint in 2017 under the TCA alleging negligence by the City, APD, and unknown officers, including negligence in failing to investigate a referral made by CYFD that arose from an incident before V.M. was killed. The

relevant incident involved an allegation that one of V.M.'s mother's boyfriends had attempted to kiss V.M.

{6}     The district court granted the City's motion for summary judgment regarding dismissal of the unknown APD officers and, central to the issue here, Respondents' lack of compliance "with the requirement of Section 41-4-16(A) to give written notice of the[ir] claims."[2] *See* Mem. Op. and Order, *Martens v. City of Albuquerque*, D-202-CV-2017-05905, at 4 (2d Jud. Dist. Ct. June 29, 2020). The district court quoted the proposition articulated in *Cummings v. Board of Regents* that "[t]he purpose of the TCA notice requirement is . . . to reasonably alert the agency to the necessity of investigating the merits of the potential claim against it." *See Cummings*, 2019-NMCA-034, ¶ 21, 444 P.3d 1058 (internal quotation marks and citation omitted). The district court focused its analysis on the Notice's allegation of "fail[ure] to properly monitor a person on probation," concluding such an allegation "does not reasonably alert the City to the necessity of investigating the merits of a claim that it failed to investigate a report of child abuse." Mem. Op. and Order 4.

---

[2]The district court's opinion and order denied the motion for summary judgment regarding the TCA notice generally, pending determination of the issue of *actual* notice. Subsequently, the district court denied Respondents' Motion to Reconsider regarding noncompliance of their written notice, and ruled the City "did not have actual notice." Mem. Op. and Final Order, *Martens v. City of Albuquerque*, D-202-CV-2017-05905, at 1 (2d Jud. Dist. Ct. Feb. 8, 2021).

{7}    The district court further analyzed this allegation in the Notice under the four purposes of the TCA notice requirement articulated in *Ferguson v. New Mexico State Highway Commission*:

> (1) to enable the person or entity to whom notice must be given, or its insurance company, to investigate the matter while the facts are accessible; (2) to question witnesses; (3) to protect against simulated or aggravated claims; and (4) to consider whether to pay the claim or to refuse it.

1982-NMCA-180, ¶ 12, 99 N.M. 194, 656 P.2d 244. The district court concluded Respondents' allegation of failure to supervise a person on probation failed the first, second, and fourth of these purposes by not referring to a potential violation of the Abuse and Neglect Act, NMSA 1978, §§ 32A-4-1 to -35 (1993, as amended through 2023).

{8}    The Court of Appeals reversed, holding Respondents' "Notice provided the City with the information necessary to investigate its involvement with the circumstances leading to V.M.'s injuries and death" and "satisfied the requirements of Section 41-4-16(A)." *Martens*, 2023-NMCA-037, ¶ 12.

{9}    Under de novo review, the Court of Appeals considered solely whether "the contents of the Notice satisfied the Section 41-4-16(A) written notice requirement." *Id.* ¶ 4. While acknowledging the legislative purposes identified in *Ferguson*, the Court concluded the TCA's written notice provision requires only "'a written notice

5

stating the time, place and circumstances of the loss or injury[,]' . . . directed to at least one of the named individuals in the statute or an agent of those individuals[,] . . . presented 'within ninety days after an occurrence giving rise to a claim for which immunity has been waived under the [TCA].'" *Id.* ¶¶ 5-6 (third alteration in original) (quoting Section 41-4-16(A)).

{10} Applying this standard, the Court of Appeals concluded the Notice satisfied Section 41-4-16(A), notwithstanding general references to negligent supervision:

> The Notice states the time, place, and circumstances of the injury by generally referring to the tortious conduct and negligence by the State, the County, and the City, which caused V.M.'s injuries and death on August 24, 2016. . . . The Notice was timely, was sent to appropriate individuals, and identified the time, place, and injury.

*Id.* ¶ 7.

{11} The Court of Appeals also addressed and distinguished the City's citations of *Cummings*, *Ferguson*, and *Marrujo v. New Mexico State Highway Transportation Department*, 1994-NMSC-116, 118 N.M. 753, 887 P.2d 747, regarding the specificity required by Section 41-4-16. *Martens*, 2023-NMCA-037, ¶¶ 8-9. First, the Court noted that *Marrujo* "considered the sufficiency of an actual notice claim and not the requirements for written notice under Section 41-4-16(A)." *Id.* ¶ 8. Second, the Court noted that *Ferguson* considered "whether the notice requirement violated due process protections and not whether a particular notice satisfied the

6

statutory requirements." *Id.* Finally, the Court acknowledged *Cummings* addressed "the sufficiency of a written TCA notice." *Id.* ¶ 9. However, where the plaintiff in *Cummings* submitted a relevant affidavit in joining an existing class action, "[t]he *Cummings* Court did not consider whether or decide that a written tort claim notice must specifically identify a claim or meet a factual threshold that would permit an investigation. Instead, [the *Cummings*] Court held that the already-filed class action complaint provided notice and the affidavit alerted the defendants that the plaintiffs intended to make claims." *Martens*, 2023-NMCA-037, ¶ 9. Based on these distinctions, the Court of Appeals concluded *Cummings* does not govern here, where "the Notice [does] . . . meet the statutory requirements on its own terms." *Id.* Accordingly, the Court of Appeals reversed and remanded. *Id.* ¶ 12.

{12}   We granted the City's timely petition for certiorari, which presented the following four questions:

> (1)   Whether a written notice that references a different time, place, and circumstance that allegedly results in loss or injury than what was pled in a lawsuit against the governmental entity complies with the Section 41-4-16 TCA notice requirement.
> (2)   To what degree is a claimant required to describe the time, place, and circumstance of the loss or injury to satisfy the written notice requirement set forth in Section 41-4-16(A) of the TCA.
> (3)   Whether the Legislative objective underlying Section 41-4-16 should be considered in determ[in]ing the degree and sufficiency of a written notice submitted pursuant to Section 41-4-16(A) of the TCA.
> (4)   Whether the rationale expressed in precedential decisions addressing the sufficiency of *actual* notice should be applied when

7

determining the degree and sufficiency of a *written* notice submitted pursuant to Section 41-4-16(A) of the TCA.

(Emphasis added.)

## II. DISCUSSION

### A. Standard of Review

{13} "Whether the district court properly dismissed [Respondents'] claims for failing to comply with the TCA's notice requirement presents an issue of law, which we review de novo." *Cummings*, 2019-NMCA-034, ¶ 16. "Under the TCA[,] defendants have the burden of proving that the notice requirement was not met." *Id.* ¶ 11 (text only).[3]

{14} We address the parties' arguments regarding each of the petition questions in turn.

### B. Respondents' Notice Satisfied Section 41-4-16(A)

**1. The time, place, and circumstance in the Notice satisfied Section 41-4-16 and did not differ from the time, place, and circumstance of the loss in the subsequent complaint**

{15} The City characterizes information in the Notice regarding time, place, and circumstance of the loss or injury as "completely different" from that in

---

[3]"(Text only)" indicates the omission of nonessential punctuation marks—including internal quotation marks, ellipses, and brackets—that are present in the text of the quoted source, leaving the quoted text otherwise unchanged.

8

Respondents' subsequent complaint. The City asserts the Notice "only provided notice of Fabian Gonzales'[s] conduct and alleged that [the City] and other governmental agencies were negligent in supervising [him]" without specifying the subsequent complaint's child abuse, neglect, or general negligence allegations. The City argues under *Cummings* that Section 41-4-16(A) is not satisfied by such differences where "[t]he purpose of the TCA notice requirement is to ensure that the agency allegedly at fault is notified that it may be subject to a lawsuit and to reasonably alert the agency to the necessity of investigating the merits of the potential claim against it." *Cummings*, 2019-NMCA-034, ¶ 21 (internal quotation marks and citation omitted). The City generally asserts that by not requiring a party to "provide the governmental entity with notice of probative evidence/facts pre-suit," the Court of Appeals' "reasoning defeats the purpose of the Section 41-4-16 TCA notice requirement to put the governmental entity on notice of a potential claim."

{16} Respondents argue for affirming the Court of Appeals, asserting that, compared to the subsequent complaint, "[t]here was no 'different' time, place or circumstance of injury as to the City['s] negligence" alleged in the Notice. Respondents point to the Notice's references to V.M.'s death "on August 24, 2016[,] . . . in the City of Albuquerque," which occurred "after the [State, the County, and

9

the City] generally engaged in tortious conduct and circumstances leading to injury and death of [V.M.]." Respondents argue these references alone satisfied Section 41-4-16(A) and aligned with the general negligence claims against the City in Respondents' complaint. Respondents highlight the Notice's claims that the City "*generally engaged in tortious conduct*" as distinct from the Notice's claims of *negligent supervision* "explicitly directed [against] the other [governmental] entities," arguing the district court and the City indulged a false premise by misreading negligent supervision as a claim against the City.

{17}   At its core, the City asserts the Notice is critically different from Respondents' complaint in identifying the time, place, and circumstance of the loss or injury and this alleged difference frustrates the purposes of the TCA notice requirement. As we discuss, the City fails to demonstrate such a critical difference exists.

{18}   Importantly, the City misrepresents the relevant allegations by stating the Notice "only provided notice" relating to negligent supervision. Instead, the Notice clearly alleges the City "generally engaged in tortious conduct and circumstances leading to injury and death of [V.M.]" and "claims may be brought regarding the negligence of the . . . City of Albuquerque which resulted in the death of [V.M.] on or about August 24, 2016." The City neither acknowledges these broader claims of negligence nor explains how they were insufficient to relevantly alert the City to

10

potential litigation. While negligent supervision, "fail[ure] to properly monitor [V.M.'s] alleged killer," was specified in the subject line of the Notice, that claim named governmental entities other than the City; implicitly, inclusion of negligent supervision in the body text remained directed against those other entities and did not negate the broader and distinct claims of negligence against the City. Thus, as the Court of Appeals concluded, the district court erred in deeming the references to negligent supervision as rendering the Notice insufficient. *See Martens*, 2023-NMCA-037, ¶ 7 ("Despite the references to probation monitoring, however, the City was made aware that a claim could be brought based on the crime committed against V.M. and associated negligence and tortious conduct leading to that crime."). The City fails to address this conclusion and instead mimics the district court's unduly limited reading of the Notice in this regard.

{19}    The complaint filed by Respondents does not provide a description of time, place, and circumstance "completely different" from that provided in the Notice. The complaint includes claims that a CYFD report of allegations of sexual violence against V.M. was referred to the City and that APD "made the decision to not investigate" those allegations contrary to the Department's responsibility under Section 32A-4-3(C) of the Abuse and Neglect Act. While these and related claims

are certainly more specific than the Notice's allegations against the City, they share the same nature of being claims of general negligence.

{20} *Cummings* supports the proposition that the TCA written notice standard is satisfied by a *correlation* between the allegations in a written notice and allegations in a lawsuit's complaint. In *Cummings*, the plaintiffs' notice affidavit included specific information relating to diagnosis, treatment, the relevant physician, and the patient's death that correlated to complaints in the existing class-action lawsuits which the plaintiffs joined. *See* 2019-NMCA-034, ¶¶ 17-18. However, nothing in *Cummings* establishes the minimum correlation that must exist between a written notice and a complaint to satisfy Section 41-4-16(A). Stated differently, the degree of specificity in the *Cummings* notice affidavit demonstrated a sufficient but not necessary level of correlation.

{21} Regardless, the City has not shown a *lack* of correlation. By relying on a noncredible characterization of the Notice—that it only provided notice regarding negligent supervision—the City has not shown a critical difference between the Notice and the complaint.

**2. The City does not show Section 41-4-16 requires specificity greater than the Notice provided**

{22} The City argues a claimant under Section 41-4-16 must include "relevant facts" regarding the time, place, and circumstance of the injury. The City asserts that,

12

because *Cummings* quoted *Maestas v. Zager*, 2007-NMSC-003, 141 N.M. 154, 152 P.3d 141, for the proposition that accrual of the TCA notice requirement is triggered by a claimant's knowledge of relevant facts, "it is evident that a [TCA] notice must contain the time, place, and circumstances that fall within the scope of Rule 11-401 NMRA." *See Cummings*, 2019-NMCA-034, ¶¶ 23-24; *see also* Rule 11-401 (governing the admissibility of evidence based on relevance). The City further construes *Cummings* as "suggest[ing] that the notice pleading standard [for a civil complaint under Rule 1-008 NMRA] is similar [to] or the same as what is required for a sufficient Section 41-4-16 written notice." Under this reading of *Cummings* and *Maestas*, the City asserts the Court of Appeals erred in "conclud[ing] that the sufficiency of a written notice is limited to what is stated in Section 41-4-16(A)."

{23}     Respondents answer with three arguments: (1) that *Cummings* cited *Maestas* regarding *timeliness* of a TCA notice, "not the *sufficiency* of what is required"; (2) that the Legislature did not require particularized facts in a written TCA notice; and (3) that a written TCA notice "cannot be held to a specificity requirement higher than that of a civil complaint" under Rule 1-008. Respondents relatedly reason requiring greater specificity "would put an enormous burden on claimants who have had fewer than ninety days to recover from an injury and consult legal counsel all without the benefit of any formal discovery."

13

**{24}** The City misreads and misapplies *Cummings*. As Respondents correctly note, the *Cummings* Court cited *Maestas* solely in the context of timeliness of a TCA notice, and nothing in *Cummings* suggests a "relevant facts" requirement pursuant to Rule 11-401 for a written TCA notice. As we have discussed, the specificity in the *Cummings* notice affidavit was *sufficient* to satisfy Section 41-4-16(A) and should not be read as *necessary*. *See* 2019-NMCA-034, ¶ 21 ("[W]ritten notice under the TCA [was] satisfied."). Further, the *Cummings* Court's recitation of the purpose of the TCA notice requirement—"to ensure that the agency allegedly at fault is notified that it may be subject to a lawsuit and to reasonably alert the agency to the necessity of investigating the merits of the potential claim against it"—does not suggest the time, place, and circumstance requirement in Section 41-4-16(A) bears a relationship to the notice pleading standard.[4] *Id.* ¶ 21 (internal quotation marks and citation omitted).

---

[4]Even if it did, under our notice pleading standard, as Respondents highlight, "general allegations of conduct are sufficient," *Zamora v. St. Vincent Hosp.*, 2014-NMSC-035, ¶ 16, 335 P.3d 1243 (internal quotation marks and citation omitted), and "it is sufficient that defendants be given only a fair idea of the nature of the claim asserted against them sufficient to apprise them of the general basis of the claim; specific evidentiary detail is not required at th[e complaint] stage of the pleadings," *Petty v. Bank of N.M. Holding Co.*, 1990-NMSC-021, ¶ 7, 109 N.M. 524, 787 P.2d 443.

{25} In short, the City presents no authority for its claim that the Court of Appeals erred when it concluded, "The written notice required by Section 41-4-16(A) is limited to the time, place, and circumstances of the loss or injury. Nothing more is required." *Martens*, 2023-NMCA-037, ¶ 6 (internal quotation marks and citation omitted). Accordingly, the City does not establish a higher standard under which the Notice would be deficient for lack of relevant facts, such as "not mention[ing] a time-period other than the date of V.M.'s death; or any City of Albuquerque employee; or any alleged tortious conduct by a City employee; or any witnesses of the alleged tortious conduct by the City; or any place or circumstance of the alleged tortious conduct."

{26} We agree with the City that the purposes of the notice requirement must be fulfilled, as discussed next. However, the City presents no basis for us to further define the degree of specificity required by Section 41-4-6(A).

**3.     The City does not show the Court of Appeals failed to consider the legislative purposes of Section 41-4-16**

{27} Pointing to the four legislative purposes of the TCA notice requirement articulated in *Ferguson*, the City asserts the Court of Appeals "readily disregarded" those purposes and "conclud[ed] that the[y] . . . are not relevant." The City appears to suggest the Court of Appeals erred in not expressly analyzing the Notice under

15

those purposes and thereby set an improperly low standard that "renders the Section 41-4-16(A) written notice requirement meaningless."

{28}   Respondents argue the legislative purposes noted in *Ferguson* were fulfilled where the Notice "enable[d] the City to notify its insurance carrier, contact APD, investigate its involvement in [V.M.'s] sexual assault and murder, and analyze its policies and procedures to see if there were violations or exposure to litigation by way of paying the claim."

{29}   The City again misreads authority. First, the Court of Appeals quoted *Ferguson* for the four legislative purposes of the TCA notice provision, which we reiterate:

> "(1) to enable the person or entity to whom notice must be given, or its insurance company, to investigate the matter while the facts are accessible; (2) to question witnesses; (3) to protect against simulated or aggravated claims; and (4) to consider whether to pay the claim or to refuse it."

*Martens*, 2023-NMCA-037, ¶ 5 (quoting *Ferguson*, 1982-NMCA-180, ¶ 12). Importantly, the Court of Appeals distinguished the district court's misreading of the Notice, as previously discussed, and properly did not analyze that misreading under the legislative purposes. *Id.* ¶ 5. That the Court of Appeals did not give credence to the district court's misreading does not suggest the purposes themselves were ignored by the Court. To the contrary, the Court implicitly considered those purposes

in its conclusion two paragraphs later: "the City was made aware that a claim could be brought based on the crime committed against V.M. and associated negligence and tortious conduct leading to that crime." *Id.* ¶ 7. Second, the Court of Appeals properly placed *Ferguson* in the context in which it was decided. *Ferguson* did not analyze the plaintiffs' compliance with the statutory requirements of Section 41-4-16; instead, the *Ferguson* Court considered whether the ninety-day limitations period violated due process protections. *See Martens*, 2023-NMCA-037, ¶ 8 (citing *Ferguson*, 1982-NMCA-180, ¶¶ 3, 11, 14). The Court of Appeals' rejection of the City's position pertained to the City's use of *Ferguson*, not to the legislative purposes articulated in *Ferguson*. In short, the City has failed to explain how the Court of Appeals' consideration of the legislative purposes in their proper context constituted error.

{30}     We consider it self-evident in our jurisprudence that statutes should not be construed in ways that frustrate legislative purposes. *Cf. Regents of Univ. of N.M. v. N.M. Fed'n of Tchrs.*, 1998-NMSC-020, ¶ 28, 125 N.M. 401, 962 P.2d 1236 ("The principal objective in the judicial construction of statutes is to determine and give effect to the intent of the [L]egislature." (internal quotation marks and citation omitted)). As the *Ferguson* Court expressed in relation to the particular legislative purposes of the notice requirement, "Determination of what is reasonably necessary

17

for the preservation of the health, safety, and welfare of the general public is a legislative function and should not be interfered with absent clear abuse." 1982-NMCA-180, ¶ 12 (*citing State v. Collins*, 1956-NMSC-046, ¶ 8, 61 N.M. 184, 297 P.2d 325). The City has not met its burden to show the Court of Appeals erred in this regard.

**4. The City does not show the need to apply actual notice cases to determine the standard for a written TCA notice**

{31}     The City quotes *City of Las Cruces v. Garcia* for the proposition that Subsections (A) and (B) of 41-4-16, respectively providing requirements for written notice and actual notice, share the same purpose: "to ensure that the agency allegedly at fault is notified that *it may be subject to a lawsuit.*" *City of Las Cruces*, 1984-NMSC-106, ¶ 5, 102 N.M. 25, 690 P.2d 1019 (internal quotation marks and citation omitted). From this shared purpose, the City reasons actual notice cases are precedential in considering the standard for whether a written notice satisfies Section 41-4-16(A). Specifically, the City points to *Marrujo*, in which this Court held two Uniform Accident Reports to be insufficient as actual notice to the state where the reports

> offered no suggestion that a tort had occurred or that a lawsuit was impending. There was nothing in the reports to distinguish th[e] case from the many other traffic fatalities in New Mexico in which the [s]tate is blameless and the driver or a private party is completely at fault. The reports served a purely statistical function.

18

1994-NMSC-116, ¶ 25. The City asserts "the vague and general nature of [the Notice], like the accident reports discussed in *Marrujo*, make it indistinguishable so as to put the City reasonably on notice of the alleged tortious conduct" in Respondents' complaint. Based on this reading of legislative intent underlying Subsections (A) and (B) of 41-4-16, the City concludes the Court of Appeals erred in ruling the Notice satisfied the written TCA notice requirement.

{32}    Respondents reply *Marrujo* is inapposite in that the police reports there "offered no suggestion that a tort had occurred or that a lawsuit was impending," *Marrujo*, 1994-NMSC-116, ¶ 25, while here, Respondents "provided timely written notice of a potential claim."

{33}    While the City's citation of *City of Las Cruces* regarding the shared purpose of Subsections (A) and (B) of 41-4-16 is germane, the City's argument under *Marrujo* fails on three fronts. First, that shared purpose applied here would be to ensure the City was notified it may be subject to a lawsuit. Contrary to the City's argument, the Notice clearly accomplished this purpose. The City does not explain how a "Notice of Claims Resulting in Injury/Death per [Section 41-4-16]" does not alert the receiver of a potential lawsuit. In its title alone, the Notice's clear relation to potential litigation stands in stark contrast to the accident reports in *Marrujo*, which "offered no suggestion that a tort had occurred or that a lawsuit was

impending." 1994-NMSC-116, ¶ 25. Second, *Marrujo*'s discussion of other cases does not demonstrate more detail is necessary to satisfy actual notice under Section 41-4-16(B) than was provided in the Notice. *See, e.g., id.* ¶ 27 ("[U]nder some circumstances, a police or other report could serve as actual notice under [S]ection 41-4-16(B), but only where the report contains information which puts the governmental entity allegedly at fault on notice that there is a claim against it." (internal quotation marks omitted) (quoting *City of Las Cruces*, 1984-NMSC-106, ¶ 6)). Third, in comparing the Notice to the *Marrujo* reports, the City characterizes the Notice as similarly "indistinguishable" but provides no explanation as to *what* it is indistinguishable *from*. The *Marrujo* Court made clear the reports there did not distinguish the plaintiffs' accident from the many other traffic fatalities that do not involve lawsuits against the state, while here, the City offers no object for a parallel comparison. To the extent the City merely implies the Notice is too vague and general, that position has been addressed.

**III.    CONCLUSION**

{34}    Respondents' Notice was sufficient under Section 41-4-16(A) of the TCA. The City failed to show the Court of Appeals erred either in determining the proper standard for a written TCA notice or in evaluating the Notice under that standard. Accordingly, we affirm the Court of Appeals.

20

{35}    **IT IS SO ORDERED.**

_____
**C. SHANNON BACON, Justice**

**WE CONCUR:**

_____
**DAVID K. THOMSON, Chief Justice**

_____
**MICHAEL E. VIGIL, Justice**

_____
**JULIE J. VARGAS, Justice**

_____
**BRIANA H. ZAMORA, Justice**